In re MARRIAGE OF Peggy J.
CASWELL and Timothy J.
Caswell,

Upon the Petition of Peggy
J. Caswell, Appellant,

And Concerning Timothy
J. Caswell, Appellee.

No. 90–877.

Supreme Court of Iowa.

Jan. 22, 1992.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Deputy Atty. Gen., and Kay Delafield, Asst. Co. Atty., for appellant.

Gary J. Boveia, Waverly, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

■ The child support recovery unit, on behalf of Peggy J. Caswell, appeals a trial court ruling granting a motion to quash an involuntary wage assignment against her former husband, Timothy J. Caswell. The appellant argues that the wage assignment, which arose out of proceedings for dissolution of the Caswells' marriage, was wrongly quashed based on the trial court's finding that there were no arrearages in the support payments due from Timothy Caswell. The Iowa Court of Appeals affirmed; we granted further review. We conclude that the trial court wrongly considered payments made by Timothy Caswell to entities other than the collection services center in deciding whether he was in default on his support payments. We now vacate the decision of the court of appeals; the decision of the district court is reversed and remanded for further proceedings consistent with this opinion.

Peggy Caswell filed a petition for dissolution of marriage on November 10, 1987. On December 10, 1987, she and her husband, the appellee herein, filed a "Stipulation and Agreement for Temporary Support," which was approved in an order signed by Judge James C. Bauch on the same day. The stipulation provided that Timothy Caswell, who was then living in the marital home, was to pay the house payments, utility payments, taxes and insurance during the pendency of the order in the amount of $720 per month. In addition, the stipulation required the payment of temporary support in the amount of $155.81 each week through the collection services center to meet the needs of Peggy and their three children.

At the time the stipulation and temporary order were finalized, the Caswells were living together. This arrangement continued until sometime after February 1, 1988. In August of 1988, Timothy Caswell stopped making the house and utility payments.

On April 20, 1989, a final dissolution decree was entered. This order required Timothy Caswell to pay $124 in child sup-

port per week for the three children, with a provision for reductions as the children became emancipated. On April 3, 1990, the child support recovery unit filed an order for mandatory income withholding with the district court, which required Timothy's employer to deduct from his wages $124 per week for current support and $30 per week for delinquent support. The total delinquency at that time was $1376.05. All monies withheld were to be paid directly to the collection services center pursuant to Iowa Code section 598.22 (1991).

The parties agree on the total amount of support paid by Timothy through the collection services center for the years 1987 through 1989; this amount is $14,862.08. The parties disagree as to the amount owing under the temporary order for the year 1988. Peggy Caswell and the child support recovery unit calculate the total obligation for 1988 as $8257.93, based on a weekly obligation accruing each of fifty-three Fridays in 1988. Timothy Caswell contends that he owes only $8102.12 for 1988, but acknowledges a total delinquency for 1987 through 1989 of $824.24. Thus, the parties' disagreement is over an amount totaling $155.81 for 1988 obligations. Although the amount is small, under either parties' computations, Timothy was more than one month delinquent in his child support obligation at the time the mandatory income withholding order was filed with the district court.

On April 27, 1990, Timothy filed a motion to quash the order for mandatory assignment of income pursuant to Iowa Code section 252D.2. The trial court entered a ruling quashing the wage assignment based upon a finding that Timothy was "current in his court-ordered support obligations to [Ms. Caswell]." The trial court based its determination on an itemized list of expenditures allegedly made by Timothy on behalf of his wife and children. These expenditures include payments made before the entry of any support order, payments made for groceries during the time Timothy was still living with his wife and children, and payments made for presents to his wife and children. None of these payments was made directly to the collec-

tion services center as required by Iowa Code section 598.22.

The appellant, CSRU, argues that Timothy was not current since only payments made to the collection services center are to be considered in determining the status of his support obligations. As a consequence, it maintains the trial court's order to quash the wage assignment was in error.

Iowa Code section 598.22 reads, in pertinent part, as follows:

Except as otherwise provided in section 598.22A, this section applies to all initial or modified orders for support entered under this chapter, chapter 234, 252A, 252C, 675, or any other chapter of the Code. All orders or judgments entered under chapter 234, 252A, 252C, or 675, or under this chapter or any other chapter which provided for temporary or permanent support payments shall direct the payment of those sums to the clerk of the district court or the collection services center in accordance with section 252B.14 for the use of the person for whom the payments have been awarded. *Payments to persons other than the clerk of the district court and the collection services center do not satisfy the support obligations created by the orders or judgments....*

Iowa Code § 598.22 (1991) (emphasis added). While recognizing the statutory directives, the trial court found an exception in that the temporary support order had provided for separate payments to be made other than to the collection services center. These separate payments were in the amount of $720 per month for home mortgage expense (including taxes and insurance) and the utility bill. Timothy made these payments until August 1988 and then quit paying them. The trial court found that these payments continued after the entry of the dissolution decree and thereby established a pattern that the parties considered to be support. The court then determined that payments made other than through the clerk of court or collection center counted toward Timothy's obli-

gations and he actually owed nothing more for child support.

Although we acknowledge the trial court's attempt to effect a fair balancing of Timothy's obligations with his general payments toward their discharge, there is no statutory allowance for this approach.

■ A statutory exception to the proviso for payments to be made to the clerk of the district court or the collection services center is provided by section 598.22A(1). That section provides for a credit on the official support payment record if a payment is confirmed by the court upon submission of an affidavit by the person entitled to receive the payment. But with this exception, section 598.22 regarding the record-keeping for support payments is clear. Payments made to individuals or entities other than the clerk of the court or the collection services center will not be deemed a credit on the official support payment record. In accordance with well-established principles of statutory interpretation, a statute must be construed to give effect to its plain language. *In re Estate of Miller*, 159 N.W.2d 441, 443 (Iowa 1968).

Our interpretation here is consistent with our holding in *Dwyer v. Clerk of District Court*, 404 N.W.2d 167 (Iowa 1987). In *Dwyer*, we held that the clerk of the district court had a duty to file an affidavit of satisfaction, authored by the child support obligee, and to enter a memorandum thereof on the judgment docket. The *Dwyer* holding has now been codified in Iowa Code section 598.22A(1) (1991). Unlike *Dwyer*, the dispute at hand involves an affidavit filed by the child support obligor, not the child support obligee.

The clearly articulated legislative mandate is grounded in two sound policy concerns. First, we have recognized the importance of having child support payments made so that the parent with physical custody has control of actual expenditures made on behalf of the child. *Slack v. Mullenix*, 245 Iowa 1180, 1186, 66 N.W.2d 99, 102 (1954). Allowing Timothy as obligor to discharge his support obligation by making purchases on behalf of the children would frustrate this policy.

The second policy concern underlying this statute is well illustrated by the instant dispute. Channeling child support payments through the collection services center and the clerk of court reduces disputes between former spouses over whether the monies were spent on purchases that qualify as "child support." Some expenditures listed in the affidavit submitted by Timothy are for Christmas and birthday gifts for Peggy Caswell and their children. Clearly, these gifts would not serve to discharge the support obligation. *Wren v. Wren*, 256 Iowa 484, 488–89, 127 N.W.2d 643, 645–46 (1964). In addition, other expenses listed may have been incurred prior to the date that the support order was entered and, if so, would not qualify as "child support." Finally, it is not at all clear whether some other purchases related to his children at all.

Because the trial court improperly applied the mandate of the statute regarding proof of support payments, we reverse the order quashing the order for involuntary wage assignment. We remand to the trial court to determine the amount of unpaid child support to which the wage assignment should apply.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.