Morris C. HURD, Appellant,

v.

IOWA DEPARTMENT OF HUMAN
SERVICES, Appellee.

No. 96–1472.

Supreme Court of Iowa.

June 15, 1998.

Rehearing Denied July 13, 1998.*

* Lavorato and Snell, JJ., taking no part.

Morris C. Hurd, Kellogg, pro se.

Thomas J. Miller, Attorney General, Diane Stahle, Deputy Attorney General, and Robert R. Huibregtse, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TENUS, JJ.

McGIVERIN, Chief Justice.

Petitioner, Morris C. Hurd, appeals a decision of the district court dismissing his petition for judicial review. In those proceedings, Hurd sought review of actions taken by the Child Support Recovery Unit (hereinafter "CSRU" or "agency") of the Iowa Department of Human Services which proposed to release information concerning his child support debt to consumer reporting agencies, pursuant to Iowa Administrative Code (hereinafter "IAC") rule 441–95.12. The district court concluded that the CSRU's records accurately reflected Hurd's child support debt, that this amount exceeded $1000, and that the CSRU therefore had authority to release this information to the credit reporting agencies. The court dismissed the petition.

Upon Hurd's appeal, we affirm.

## I. Background facts and proceedings.

The marriage of petitioner, Morris C. Hurd, and Linda Hurd was dissolved by decree in 1990 in the district court for Ida County. The dissolution decree ordered Morris to pay $400 per month in child support for the couple's two daughters, Maureen, born June 9, 1971, and Heather, born October 29, 1974, to be paid to the Ida County clerk of district court. The support payments were to continue until each child reached the age of eighteen, but if a child was enrolled in college, then payments were to continue as long as the child met the requirements of Iowa Code section 598.1(2) (1989).[1] The decree stated that in no event

---

1. At the time the dissolution decree was filed, the child support provisions were found at Iowa Code section 598.1(2). These provisions are now found at Iowa Code section 598.1(6) (Supp. 1997). The child support provisions regarding support for children enrolled in college were amended in 1997. *See* Iowa Code § 598.1(6) (Supp.1997).

were payments to continue beyond a child's twenty-third birthday.

Morris fell behind in his child support payments. As a result, Linda Hurd requested the assistance of the CSRU in 1993 to enforce the support provisions of the dissolution decree. As of May 22, 1993, Morris' support delinquency totaled $8175.

In May 1995 the CSRU sent Morris a notice informing him that he owed a child support arrearage of at least $1000 and that his name would be released to consumer reporting agencies thirty days after the date of the notice pursuant to federal and Iowa regulations.[2] *See* 42 U.S.C. § 666(a)(7) (1994); 45 C.F.R. § 303.105 (1995); Iowa Admin.Code r. 441–95.12 (1995). The notice stated that Morris had a right to a review of the CSRU's decision if he disagreed with the amount due and that he would be required to submit proof to support his position.

Hurd exercised his right to review and requested a conference with the CSRU regarding the child support debt owed. He also filed a notice of various affirmative defenses to the charges.

At a conference with the CSRU on August 24, 1995, Hurd argued that he was entitled to credit against the child support debt for payments he allegedly made directly to his children but which were not made to the clerk of district court, that the dissolution decree with respect to child support had been modified by agreement of the parties, and that Heather was not a full-time student. Hurd submitted only two exhibits at the conference. One exhibit was a birthday note from his daughter Maureen, and the other was an uninsured motorist distribution statement issued to his daughter Heather concerning money for injuries she sustained from an automobile accident that occurred on February 14, 1993.

The CSRU file contained information concerning the amount of Hurd's child support obligation due under the 1990 dissolution decree according to clerk of court records, evidence that daughter Heather was a full-time college student at all material times and the amounts of child support payments Hurd had paid to the clerk of district court.

Under Iowa Code section 252B.14(4), child support payments that Hurd may have made to persons other than the clerk of district court or the collection services center do not satisfy the support obligations created by the dissolution case judgment, except as provided by Iowa Code sections 598.22 and 598.22A (1995). Hurd made no contention he had paid more than $6775 to the clerk of district court or to Linda Hurd.

On August 29, 1995, a CSRU officer filed a decision rejecting Hurd's contentions. The decision stated that Hurd's past due child support totaled $16,525 which was obviously more than the $1000 arrearage that would authorize the CSRU to release information concerning Hurd's support obligation to consumer reporting agencies.

Hurd filed a petition for judicial review under Iowa Code chapter 17A in district court asserting, inter alia, that the CSRU had violated his constitutional rights by failing to give him proper notice, hearing and opportunity to be heard concerning his child support debt.

After a hearing was held regarding Hurd's petition for judicial review, the district court dismissed the petition. The district court stated that petitioner was not entitled to a formal hearing before that agency. Additionally, the district court concluded that Hurd failed to supply sufficient proof to the agency to substantiate his position and that the child support recovery officer confirmed the overdue amount listed on agency records. The district court further concluded that issues raised by Hurd concerning alleged modification of the original support order and whether he should be granted credit for payments made other than to the clerk of court

---

2. A "consumer reporting agency" is defined as follows:

   [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.
   45 U.S.C. § 303.105(a).

fell under the jurisdiction of the Ida County district court that issued the original dissolution decree.

After an adverse ruling on his Iowa rule of civil procedure 179(b) motion, Hurd appealed.

## II. Standard of and issues for review.

Our review of the district court's judicial review ruling is for correction of errors at law. See Iowa Code § 17A.20; Iowa R.App.P. 4; *Squealer Feeds v. Pickering,* 530 N.W.2d 678, 681 (Iowa 1995). Although we give weight to an agency's interpretation of a statute, we are not bound by that construction. *City of Des Moines v. Public Employment Relations Bd.,* 275 N.W.2d 753, 758 (Iowa 1979).

Although Hurd raises a multitude of issues on appeal, the only issue addressed by the district court, and the only issue we need address in this appeal, is whether the CSRU properly exercised its authority in finding that Hurd owed more than $1000 in child support. See *Sindlinger v. State Bd. of Regents,* 503 N.W.2d 387, 390 (Iowa 1993) (discussing standard of review in administrative law cases characterized as "other agency action"); *Sheet Metal Contractors v. Comm'r of Ins.,* 427 N.W.2d 859, 867 (Iowa 1988) (noting that a party cannot challenge "other agency action" on the "substantial evidence" ground specified in section 17A.19(8)(f)). If so, then the CSRU has authority to release information concerning Hurd's child support arrearage to credit reporting agencies pursuant to IAC rule 441–95.12. Before addressing the merits of this issue, however, we think it helpful to first clarify what information may be considered in determining whether Hurd owed more than $1000 in child support.

## III. Credit for child support payments not made to the clerk of court.

On appeal, Hurd contends that he should receive credit against his child support debt for payments allegedly made directly to his children, or for items he paid for

or on their behalf.[3] This contention has no merit. First, the dissolution decree specifically ordered Hurd to direct his child support payments to the Ida County clerk of court. Second, the legislature has plainly stated that child support payments shall be directed to the clerk of the district court or the collection services center in order to be given credit on the child support judgment obligation. See Iowa Code §§ 252B.14(2), (3); 598.22 ("payments to persons other than the clerk of the district court and the collection services center do not satisfy the support obligations created by the orders or judgments"). The only exception to this rule is if payment is confirmed by the court upon submission of an affidavit by the person entitled to receive the support payment. See Iowa Code § 598.22A(1). Since Hurd has no affidavit from Linda stating she received child support payments directly from Hurd, the exception allowed by Iowa Code section 598A.22(1) is not applicable. The rule is simple. A child support obligor will only receive credit for child support payments made to the appropriate clerk of court or to the collection services center. See Iowa Code §§ 252B.14(4); 598.22; *In re Marriage of Caswell,* 480 N.W.2d 38, 40 (Iowa 1992). Hurd thus receives no credit for payments that he allegedly made directly to his children or for items he bought on their behalf. We believe the policy reasons supporting this rule are obvious and do not bear repeating here. See *Caswell,* 480 N.W.2d at 40.

## IV. Modification of child support obligation.

Hurd claims that the dissolution decree was orally modified and that the child support amount was reduced to $200 per month. He further claims that he no longer has a responsibility to pay child support because Heather is not a full-time college student, as required by the dissolution decree. We need not address these claims because they are nothing more than an attempt by Hurd to alter the terms of the dissolution

---

**3.** We point out that this is not a situation where the obligor contends payments were made to the appropriate county clerk of court and that such payments were not credited to the obligor's ac-

count. Here, Hurd contends he should receive credit for money he allegedly gave directly to his children or for items he purchased for them.

decree with respect to the amount of child support he must pay each month. The legislature has clearly stated such actions must be initiated in district court in the original dissolution case. *See* Iowa Code § 598.21(8). Thus, Hurd's only remedy concerning the amount of child support he must pay each month must be pursued as a petition to modify the child support provisions of the original divorce decree. Accordingly, the district court properly refused to address Hurd's claim concerning his monthly child support obligation.

Having determined what information may properly be considered in calculating the amount of child support owed by Hurd, we now turn to the merits of the main issue we must consider in this appeal.

## V. Release of information to credit reporting agencies.

The CSRU has a duty under federal law to disclose information concerning child support debts to credit reporting agencies. *See* 42 U.S.C. § 666(a)(7); 45 C.F.R. § 303.105. To comply with this duty, the Iowa Department of Human Services has implemented regulations setting forth the procedure to follow in disclosing such information. *See* Iowa Admin.Code r. 441–95.12(1). IAC rule 441–95.12 states:

(1) The bureau chief shall make information available to consumer reporting agencies, upon their request, regarding the amount of overdue support owed by a responsible person only in cases where the *overdue support exceeds $1000.*

Subsections (2) and (3) of IAC rule 44–95.12 set forth the provisions concerning notice requirements and an opportunity to challenge the proposed release of information:

(2) A notice of proposed release of information shall be sent to the last known address of the responsible person 30 calendar days prior to the release of the support arrearage information to a consumer reporting agency. This notice shall explain

the information to be released and the methods available for contesting the accuracy of the information.

(3) The responsible person may, within 15 days of the date of the notice of proposed release of information, *request a conference with the child support recovery officer to contest the accuracy of the information* to be given to the consumer reporting agency. *In contested cases* no referral shall be made to the consumer reporting agency until after the amount of overdue support has been confirmed to exceed $1000.

(Emphasis added.) Subsections (2) and (3) track the federal law's requirement that the state child support enforcement agency comply with all state procedural due process requirements before releasing the obligor's debt information to the consumer reporting agencies. *See* 42 U.S.C. § 666(a)(7); 45 C.F.R. § 303.105(d).

■ The administrative record shows that the CSRU informed Hurd in May 1995 that his overdue child support payments exceeded $1000. At the August 1995 conference, Hurd presented no evidence under the applicable statutes showing this amount to be incorrect. As stated above, Hurd only receives credit for payments he made to the Ida County clerk of court or the collection services center. Since Hurd has presented no evidence that he has made all child support payments that are due to the Ida County clerk of court, he clearly owes more than $1000 in child support.[4] This fact alone gave the CSRU sufficient basis to release information concerning Hurd's child support debt to credit reporting agencies. The district court therefore properly upheld the action of the CSRU and dismissed Hurd's petition for judicial review.

## VI. Type of proceeding.

Hurd contends that the phrase "in contested cases" mentioned in IAC rule 441–95.12(3) establishes his right to a "contested case"

4. We point out that according to Hurd's own records as they appear in the appendix, he owed more than $1000 in child support at the time Heather turned eighteen on October 29, 1992, and that he made no payments to the Ida County clerk of court after that date. Hurd also admits in his brief that he stopped making monthly support payments following daughter Heather's automobile accident, on the basis that she allegedly could not attend college full-time.

hearing before the agency. Hurd also asserts that the CSRU violated his constitutional right to due process of law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution by failing to give him a full evidentiary-type hearing as allowed in a "contested case" before making the decision to release his name to credit reporting agencies.

"Under [Iowa Code] chapter 17A, an agency's action may be characterized as rule-making, contested case or other agency action." *Citizens' Aide/Ombudsman v. Rolfes,* 454 N.W.2d 815, 817 (Iowa 1990). Here, neither party contends that the CSRU's action with respect to disclosing information to consumer reporting agencies qualifies as rule-making. Thus, the agency action at issue here is either a contested case or other agency action. The importance of the distinction between the various types of agency action lies in the procedural due process which attaches to contested cases. *See* Iowa Code §§ 17A.10–.17, .19; *Polk County v. Iowa State Appeal Bd.,* 330 N.W.2d 267, 276 (Iowa 1983).

■ Under chapter 17A, a contested case is defined as a

> proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing.

Iowa Code § 17A.2(5). Agency action or "adjudication" falls into the contested case category if the constitution or a state statute requires an evidentiary hearing. *Polk County,* 330 N.W.2d at 276. If the hearing required is not an evidentiary hearing, then the adjudication is merely an informal adjudication and falls into the "other agency action" category. *Id.*

■ We first point out that nothing in our state constitution, our state law, or in 42 U.S.C. § 666(a)(7) imposes a duty on the CSRU to provide a child support obligor with an "evidentiary" or contested case-type hearing before the agency can release the obligor's name to credit reporting agencies. The

federal law and corresponding regulations only require that the state enforcement agency comply with all state procedural due process requirements. *See* 42 U.S.C. § 666(a)(7); 45 C.F.R. § 303.105. Thus, the action taken by the CSRU with respect to holding a conference as called for in IAC rule 441–95.12(3), is not considered a contested case proceeding. *See Polk County,* 330 N.W.2d at 277. Furthermore, the CSRU does not determine the legal rights, duties or privileges of a child support obligor simply by confirming that an obligor owes more than $1000 in child support or by releasing this information to a consumer reporting agency. *Cf. Citizens' Aide/Ombudsman,* 454 N.W.2d at 817 (investigation by Office of Citizens' Aide of county sheriff concerning allegations of misuse of government property and gift law violations did not determine sheriff's legal rights and duties and thus was not a contested case action; purely investigative or fact-finding activity is not an adjudication of legal rights).

Additionally, we believe that the phrase "contested cases" when considered in context in IAC rule 441–95.12 simply refers to a situation where there is a *dispute* regarding the amount of child support owed and does not mean that a child support obligor has a right to a contested case hearing as defined in Iowa Code section 17A.2(5) before the CSRU can release information concerning an obligor's child support arrearage.

■ We further conclude that the "conference" provided for in IAC rule 441–95.12 affords a child support obligor sufficient due process in connection with actions taken by the CSRU to release information concerning the obligor's child support debt to consumer reporting agencies. Although the "conference" is not a formal contested case-type hearing, the obligor is given an opportunity, as Hurd was given in this situation, to present evidence or information showing that the amount owed according to agency records is incorrect under applicable statutes.

Here, the administrative record shows that Hurd received notice that he owed more than $1000 in child support and that his name would be released to consumer reporting agencies thirty days after the date of the

notice. The notice also informed Hurd that he had a right to a review of the CSRU's decision if he disagreed with the amount of child support due and that he would be required to submit proof to support his position. Thus, Hurd knew that the burden was on him to present evidence or information showing that he owed less than $1000 in child support under the applicable statutes. Being fully aware of this burden, Hurd chose to present only two exhibits at the conference, neither of which showed that he owed less than $1000 in child support.

We also point that even when given the opportunity in district court in connection with his petition for judicial review, *see* Iowa Code section 17A.19(7), Hurd presented no relevant evidence to show that he owed less than $1000 in child support payments.[5]

Hurd makes several other contentions that his constitutional rights were violated. We conclude these claims either were not preserved for appeal or have no merit.

*VII. Disposition.*

We conclude that the conference provided for in Iowa Administrative Code rule 441–95.12(3) affords a child support obligor sufficient due process when the CSRU seeks to release information concerning the obligor's child support arrearage to consumer reporting agencies. We further conclude that the CSRU properly exercised its authority in finding that Hurd owed more than $1000 in child support. The district court properly dismissed petitioner Hurd's petition for judicial review and we affirm the judgment of the district court.

**AFFIRMED.**

---

5. We also point out that the district court ordered the CSRU to provide Hurd with a "detailed accounting of child support owing" and that the CSRU complied with this order.