# IN THE COURT OF APPEALS OF IOWA

No. 16-0720
Filed December 21, 2016

**JAMES DELIRE,**
        Petitioner-Appellant,

**vs.**

**KEY CITY TRANSPORT, INC. and GREAT WEST CASUALTY COMPANY,**
        Respondents-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.

        Employee appeals from judgment affirming a workers' compensation

award.  **AFFIRMED.**

        Mark J. Sullivan of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

        Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron &

Wegman, L.L.P., West Des Moines, for appellees.

        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**MCDONALD, Judge.**

This case presents a question of statutory interpretation regarding the calculation of weekly earnings pursuant to Iowa Code section 85.36 (2015) to be used in determining workers' compensation benefits.

I.

This matter has come before this court on a prior occasion. *See Key City Transp., Inc. v. Delire*, No. 14-1755, 2015 WL 5285799 (Iowa Ct. App. Sept. 10, 2015). The facts and circumstances of the case are set forth in our prior opinion and need not be repeated in great detail herein. In sum, Key City Transport hired Delire to work as an over-the-road truck driver to make long-haul trips from Iowa to California and back. Delire's compensation was calculated based on mileage plus drop fees. Delire claims the employer told him at the time of hiring he would earn approximately $75,000 per year. Delire commenced employment with Key City on May 23, 2008. During Delire's first week with Key City, he did not make any long-haul runs. He did make several local runs. In his first week, Delire earned $257.04 in mileage and $155 in drop fees, for a total of $412.04. The next week, Delire traveled to California and back. Delire earned $1,254.26 in mileage and $40 in drop fees for a single drop, for a total of $1,294.26. In his third week of work, Delire made a second trip to California and back. This time, he earned $1,425.62 in mileage and $240 in drop fees, for a total of $1,665.62. Delire was injured on this third trip. This is the injury at issue.

It is necessary to discuss the procedural history of this case. In the first trip through agency proceedings, the deputy commissioner awarded Delire healing-period benefits and calculated Delire's weekly earnings to be $1,494.26.

The deputy commissioner calculated Delire's weekly earnings based on Delire's second week of earnings and $200 in imputed drop fees, which the deputy commissioner believed would be typical for a west-coast route. The deputy commissioner also concluded the amount was consistent with Delire's claim he was told he would earn approximately $75,000 per year. The commissioner affirmed the award of benefits but recalculated Delire's weekly earnings. The commissioner found there was no evidence in the record on what other employees in similar positions earned and found there were no weeks of work representative of Delire's earnings. The commissioner found Delire's weekly earnings to be $1,346.15 based on hypothetical annual income of $70,000. The determination of annual income was based on the commissioner's purported knowledge of the industry.

The employer sought judicial review of the agency's final action. The district court affirmed the award of benefits but reversed the agency's calculation of weekly earnings, finding it to be irrational, illogical, and unjustifiable. This court affirmed the district court's decision. This court concluded "[t]he commissioner's use of hypothetical annual earnings to obtain weekly earnings cannot be upheld as rational, logical, or justifiable when the acceptable methods of determining Delire's weekly earnings are set forth by statute." *Key City Transp.*, 2015 WL 5285799, at *7. This court remanded the case to the agency to calculate weekly earnings in accord with the statute based on the existing record. *See id.* In this appeal, Delire challenges the agency's decision after remand.

4

II.

Agency decisions are reviewed according to the standards expressed in Iowa Code section 17A.19. We review the agency's decision for the correction of legal error. *See* Iowa Code § 17A.19(10)(c); *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016). The court does not have to give deference to the commissioner's interpretation of chapter 85. *See Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 65 (Iowa 2015) ("In recent years, we have repeatedly declined to give deference to the commissioner's interpretations of various provisions in chapter 85."). The commissioner's findings of facts are given the effect of a jury verdict. *See Evenson*, 881 N.W.2d at 366. The district court acts with appellate capacity "when it exercises its judicial review power." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). "When reviewing a district court's decision 'we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. If they are the same, we affirm; otherwise, we reverse." *Id.* (quoting *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004)).

III.

A.

Delire argues the commissioner wrongly interpreted the statutory provision setting forth the method for calculating weekly earnings—as applicable here, Iowa Code section 85.36(6) and (7). "The primary rule of statutory interpretation is to give effect to the intention of the legislature." *State v. Casey's Gen. Stores, Inc.*, 587 N.W.2d 599, 601 (Iowa 1998). When interpreting statutes, "[w]e look no

further than the language of the statute when it is unambiguous." *Standard Water Control Sys., Inc. v. Jones*, No. 15-0458, 2016 WL 4543505, at *1 (Iowa Ct. App. Aug. 31, 2016). It is a well-established rule of statutory construction that "a statute must be construed to give effect to its plain language." *In re Marriage of Caswell*, 480 N.W.2d 38, 40 (Iowa 1992); *see also In re Detention of Fowler*, 784 N.W.2d 184, 187 (Iowa 2010) ("Our rules of statutory interpretation are well established. . . . We do not search for meaning beyond the express terms of a statute when the statute is plain and its meaning clear.").

Iowa Code section 85.36 states:

> The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury. Weekly earnings means gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was injured, as regularly required by the employee's employer for the work or employment for which the employee was employed, computed or determined as follows and then rounded to the nearest dollar.

Subsection 6 sets forth the method for calculating the weekly earnings of an employee who is paid "by the output of the employee." It provides as follows:

> In the case of an employee who is paid on a daily or hourly basis, or by the output of the employee, the weekly earnings shall be computed by dividing by thirteen the earnings, including shift differential pay but not including overtime or premium pay, of the employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury. If the employee was absent from employment for reasons personal to the employee during part of the thirteen calendar weeks preceding the injury, the employee's weekly earnings shall be the amount the employee would have earned had the employee worked when work was available to other employees of the employer in a similar occupation. A week which does not fairly reflect the employee's customary earnings shall be replaced by the closest previous week with earnings that fairly represent the employee's customary earnings.

Iowa Code § 85.36(6). Subsection 7 sets forth the method for calculating the weekly earnings of an employee "who has been in the employ of the employer less than thirteen calendar weeks immediately preceding the injury." It provides:

> In the case of an employee who has been in the employ of the employer less than thirteen calendar weeks immediately preceding the injury, the employee's weekly earnings shall be computed under subsection 6, taking the earnings, including shift differential pay but not including overtime or premium pay, for such purpose to be the amount the employee would have earned had the employee been so employed by the employer the full thirteen calendar weeks immediately preceding the injury and had worked, when work was available to other employees in a similar occupation. If the earnings of other employees cannot be determined, the employee's weekly earnings shall be the average computed for the number of weeks the employee has been in the employ of the employer.

Iowa Code § 85.36(7).

This court remanded this matter to the agency to recalculate Delire's weekly earnings based on the existing record. *See Key City Transp.*, 2015 WL 5285799, at *6–7. Delire was employed for "less than thirteen weeks immediately preceding the injury." Iowa Code § 85.36(7); *see Key City Transport*, 2015 WL 5285799, at *6. Thus, subsection 7 was the applicable code provision. There was no evidence of "the earnings of other employees" in the record. *Id.* The commissioner thus interpreted subsection 7 to require the calculation of Delire's average weekly earnings based on the compensation actually paid Delire. The commissioner did so and found Delire's weekly earnings were $1,026.14.

Delire contends the commissioner erred in interpreting and applying section 85.36(7) when calculating his weekly earnings. Delire argues subsection

7 required the commissioner to calculate his weekly earnings according to subsection 6. Delire further argues, pursuant to subsection 6, his first week of earnings should have been excluded from the calculation because it was a "week which does not fairly reflect [Delire's] customary earnings." Iowa Code § 85.36(6).

We have little trouble concluding the agency's interpretation and application of the statute were correct. Subsection 7 contains two independent sentences. Each sets forth a different calculation to be applied in determining the weekly earnings of an employee employed fewer than thirteen weeks preceding the injury. According to the plain language of the first sentence, if the employer has other employees in a similar occupation from which to determine weekly earnings, then the claimant's weekly earnings should be calculated according to subsection 6, taking into account all the exceptions therein. But, if the weekly earnings of other employees cannot be determined based on the evidence in the record, as is the case here, then the unambiguous language of the second sentence states the claimant's weekly earnings are calculated according to the "average computed for the number of weeks the employee has been in the employ of the employer." Iowa Code § 85.36(7). Subsection 7 is unambiguous: if there is not evidence in the record of the weekly earnings of comparable employees, the claimant's weekly earnings are calculated by finding the claimant's average actual weekly earnings. We need not "search for meaning beyond the express terms" of this subsection. *Fowler*, 784 N.W.2d at 187.

"[T]he acceptable methods of determining Delire's weekly earnings are set forth by statute." *Key City Transp.*, 2015 WL 5285799, at *7. The statutory method is the fairest formula for determining weekly earnings where the employee has been employed only a short time prior to injury and the record is otherwise inadequate. *See Hanigan v. Hedstrom Concrete Prods., Inc.*, 524 N.W.2d 158, 160 (Iowa 1994) ("This claimant did not produce evidence of what a truly similar employee would have earned. In view of the lack of evidence on that matter, it would be difficult to formulate a fairer test for a wage basis than to average the wages actually received by the employee."). While Delire contends "statutes for computation of wage bases are 'meant to be applied, not mechanically nor technically, but flexibly,'" we must still apply the law according to its plain language. *Hanigan*, 524 N.W.2d at 160 (quoting 2 Arthur Larson, *Workmen's Compensation Law* § 60.11, at 10–622 (1994)); *see Warren Props. v. Stewart*, 864 N.W.2d 307, 315 (Iowa 2015) (stating, in the context of chapter 85, the court is "required to use the plain language of the statute when construing statutes"). "[T]he principle of liberal construction does not vest th[e] court with an editor's pen with the power to add or detract from the legislature's handiwork." *Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 135 (Iowa 2010). "Fidelity to the text best honors the legislature's expressed policy determination." *Hoyt v. Wendling Quarries*, No. 14-0800, 2015 WL 576174, at *2 (Iowa Ct. App. Feb. 11, 2015).

B.

Delire contends it was error for the agency not to infer evidence of the earnings of other drivers in a similar occupation would have supported his

desired calculation if there had been such evidence. Delire contends this evidence was in the sole control of Key City and undiscoverable by Delire and thus an adverse inference should have been drawn. *See Quint-Cities Petroleum Co. v. Maas*, 143 N.W.2d 345, 348 (Iowa 1966) ("[I]t stands without argument that where relevant evidence is within the control of a party whose interests would naturally call for its production, and he fails to do so without satisfactory explanation, it may be inferred such evidence would be unfavorable to him."); *Hassin v. Verizon Data Servs., Inc.*, No. 5013575/5015255, 2006 WL 2239330, at *12 (Iowa Workers' Comp. Comm'n July 31, 2006) (same).

We disagree an adverse inference should have been drawn under the circumstances. It is the claimant's burden to establish his claim. *See, e.g., Hanigan*, 524 N.W.2d at 160 (rejecting the claimant's argument regarding the calculation of weekly earnings where the "claimant did not produce evidence of what a truly similar employee would have earned"). Further, the argument was disposed of in the prior appeal, where we concluded mere speculation regarding Delire's weekly compensation was impermissible. *See Key City Transp.*, 2015 WL 5285799, at *6–7.

## C.

Delire contends the remand decision failed to give deference to prior agency findings that Delire was told he would earn approximately $75,000 per year. It is unclear why Delire believes deference should be afforded under the circumstances. "It is a familiar legal principle that an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d

101, 103 (Iowa 2000). "The law-of-the-case doctrine provides, 'the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case.'" *Travelers Prop. Cas. Co. of Am. v. Flexsteel Indus., Inc.*, No. 15-0103, 2016 WL 4384479, at *4 (Iowa Ct. App. Aug. 17, 2016) (quoting *Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016)). "Issues decided on appeal cannot, generally, be reheard, reconsidered, or relitigated; the appellate decision is final as to all issues decided; and the trial court is obligated to follow that decision." *Id.*

This court previously concluded "[t]he [earlier] commissioner's use of hypothetical annual earnings to obtain weekly earnings cannot be upheld as rational, logical, or justifiable when the acceptable methods of determining Delire's weekly earnings are set forth by statute." *Key City Transp.*, 2015 WL 5285799, at *7. Upon remand, the agency was bound to calculate Delire's weekly earnings according to the statutorily authorized method and not based on deference to the agency's prior decision, which this court concluded was not rational. Delire's attempt to relitigate this issue is blockaded by the law-of-the-case doctrine.

## D.

Delire next contends the commissioner's remand decision was not supported by substantial evidence. Specifically, he argues the agency should not have considered his first week of work and should have considered the contention Delire was promised at the time of hire that he would make up to $75,000 per year. We conclude the agency's decision is supported by substantial evidence. "Evidence is substantial when a reasonable mind could

accept it as adequate to reach the same finding." *Bearce v. FMC Corp.*, 465 N.W.2d 531, 534 (Iowa 1991). It is uncontroverted Delire made $412.04 his first week, $1,294.26 his second, and $1,665.62 his final week. It is also uncontroverted he worked for three weeks and two days. The commissioner calculated Delire's actual average weekly earnings based on his historical earnings. This is all the statute allowed. Our case law provides this method of determining weekly earnings is fair. The commissioner's calculation was based on substantial evidence.

E.

Delire's final claim is the same argument as the others but delivered in a different legal vehicle. Delire contends the agency's decision is illogical and irrational because it does not take into account his claim he was told he would earn approximately $75,0000 per year and because the commissioner included his first week of work in the calculation. It was not irrational for the commissioner to calculate Delire's weekly earnings according to the plain language of section 85.36(7). Nor was it irrational for the commissioner to not consider Delire's testimony regarding the representation made to him at the time of hire. Section 85.36(7) unambiguously sets forth the method for calculating weekly earnings where the employee was employed fewer than thirteen weeks preceding the injury at issue and where there is no evidence regarding the weekly earnings of similarly situated employees. In the mandate of the prior appeal, this court instructed the agency to apply the statutory formula to the existing record. *See Key City Transp.*, 2015 WL 5285799, at *6–7. It was not irrational for the agency to comply with the statutory formula and this court's mandate.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**