Karen R. **LUNDE**, Appellant,

v.

**IOWA BOARD OF REGENTS**, Appellee.

No. 91–760.

Court of Appeals of Iowa.

March 24, 1992.

Paul D. Lunde, Ames, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and John M. Parmeter, Special Asst. Atty. Gen., for appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

In 1987, during her third year of medical school at the University of Iowa, Karen R. Lunde received unsatisfactory reviews in three clinical rotations: neurology, urology, and obstetrics-gynecology. The School of Medicine (medical school)[1] placed her on academic probation on January 18, 1988. While on probation, she received an incomplete after six weeks in a pediatric clerkship. She later repeated two weeks of that clerkship.

Karen R. Lunde's academic progress was reviewed by the Committee on Student Promotions in several meetings at which she appeared and made statements. The Promotions Committee recommended cancellation of her registration in the medical school. The matter was reviewed by the Medical Council and Executive Committee which canceled her medical school registration. The Assistant Dean of Academic Affairs affirmed the dismissal. The Board of Regents upheld the decision of the College of Medicine.

In all stages of these proceedings the University and Board of Regents declined to use contested case procedures as advocated by Karen R. Lunde's attorney. Rather, the dismissal was conducted following the informal "meet and confer" procedures set out in the medical school's student handbook.

She appealed to the district court which affirmed the dismissal. The court believed that she was not entitled to contested case proceedings before the University. It rejected her claim of discrimination on the basis of sex, violation of her rights to freedom of speech, and equal protection. The court concluded that only valid academic criteria were applied in her dismissal. She has appealed. We affirm.

## I. *Issues.*

■ After reviewing the briefs by the parties, we are convinced there are two main issues properly before this court. The first and preliminary issue is whether Karen R. Lunde was entitled to contested case proceedings prior to her dismissal. The second is whether from the evidence we should uphold the medical school's dismissal of her for academic reasons. We determine the other issues, including the first-amendment issues, raised by Karen R. Lunde in her brief are without merit.[2]

## II. *Contested Case.*

The trial court ruled this action was not a "contested case" as defined by Iowa Code 17A.2(2). Rather, it held the present case was "other agency action." We set out the pertinent code section.

> *"Contested case"* means a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing.

Iowa Code section 17A.2(2).

■ There is a significant difference between the procedural requirements for a "contested case" and "other agency action." A "contested case" requires a formal evidentiary adversarial hearing before the agency. "Other agency action" entitles the person affected to no more than an informal hearing, without the procedural due process safeguards inherent in an adversarial proceeding. *See Hollinrake v. Law Enforcement Academy*, 452 N.W.2d 598, 601–602 (Iowa 1990); *see also* Bonfield, *The Definition of Formal Agency Action Under the Iowa Administrative*

---

1. Although the Iowa Board of Regents is the named party in this action, several levels of administration have been involved at various times. For the sake of simplicity, we refer to the Board and others included as appellees as the "medical school."

2. We agree with the trial court's finding that appellant's argument that she was dismissed from the medical school as a consequence of exercising her rights to freedom of speech is

without factual basis. As the trial court found: "There is simply no question that petitioner's difficulties stemmed not from, for example, expressing political views or stating medical opinions contrary to her professors'. Rather, as was apparent from the testimony of Dr. Healy, the problems arose because petitioner's speech and conduct was disruptive of the academic process."

*Procedure Act,* 63 Iowa L.Rev. 285 (1977). The contested case requirement is premised on procedural due process considerations. *Hollinrake,* 452 N.W.2d at 602. "When a decision is based solely on legislative facts, *due process does not require a hearing....*" *Id.* (emphasis added).

The United States Supreme Court, in *Board of Curators v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), considered the procedural due process issue in a case similar to the one presently before us. In that case, as in this one, a female medical student was dismissed for inability to successfully complete the clinical rotations to the satisfaction of her medical professors. *Id.* at 81–82, 98 S.Ct. at 950–51, 55 L.Ed.2d at 129–30.

■ The student in *Horowitz* attacked her dismissal on the grounds of the due process clause of the fourteenth amendment. *Id.* at 79–80, 98 S.Ct. at 949–50, 55 L.Ed.2d at 128–29. She claimed she was denied procedural due process by the medical school's failure to afford her a formal evidential hearing, similar to that requested by Karen R. Lunde here. *Id.* at 79–80, 98 S.Ct. at 950, 55 L.Ed.2d at 128. The student's challenge was based, at least in part, on equal protection issues, including gender discrimination.[3] *See Id.* at 92 n. 7, 98 S.Ct. at 956 n. 7, 55 L.Ed.2d at 136 ("Respondent alleges that the school applied more stringent standards in evaluating her performance than that of other students because of her sex, religion, and physical appearance."). The Supreme Court held the female student's due process rights were not violated. *Id.* 435 U.S. at 84–90, 98 S.Ct. at 952–55, 55 L.Ed.2d at 131–35.

Although *Horowitz* was decided on constitutional due process grounds, both the facts and its rationale apply in the present case. The student in *Horowitz* was seeking a formal adversarial hearing before the medical school board. *Id.* at 79–90, 98 S.Ct. at 949–55, 55 L.Ed.2d at 128–35. Likewise, Karen R. Lunde is seeking a contested case proceeding here. A contested case would involve an adversarial hearing with presentation of evidence and cross-examination of witnesses, with identical due process considerations. In *Horowitz,* the student was granted other remedial measures in order to improve her clinical standing. *Id.* at 81–86, 98 S.Ct. at 950–53, 55 L.Ed.2d at 129–32. She was allowed to appeal her dismissal to the university administration. *Id.* at 82, 98 S.Ct. at 951, 55 L.Ed.2d at 130.

The female medical student in *Horowitz* likewise indicated sexually discriminatory reasons played a role in her dismissal. *Id.* at 92 n. 7, 98 S.Ct. at 956 n. 7, 55 L.Ed.2d at 136. Finally, both the female student in *Horowitz* and Karen R. Lunde here were afforded a full trial before the district court to contest their dismissals. *Id.* at 79–80, 98 S.Ct. at 950, 55 L.Ed.2d at 128. The Supreme Court ruled in *Horowitz* that these various remedial measures (and opportunities to appeal) *"went beyond constitutionally required procedural due process...."* *Id.* at 85, 98 S.Ct. at 952, 55 L.Ed.2d at 132 (emphasis added).

Karen R. Lunde's insistence upon her entitlement to contested case proceedings is analogous to the procedural due process claim advanced in *Horowitz.* She had notice of the professors' dissatisfaction with her clinical rotations. She was given the opportunity to remedy the situation. She appealed her dismissal. In fact, she was afforded even more due process than the student in *Horowitz,* as she was allowed to appear before the deciding agency and present a statement and exhibits on her own behalf.

She subsequently was afforded a full adversarial trial in district court. The

---

3. The appellant takes issue with the medical school's claim that her dismissal was for academic reasons. Rather she claims it was due, at least in part, to illegal sex discrimination in the form of illegal sexual stereotyping of the type involved in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The district court, however, found to the contrary. In doing so, it determined there was no evidence that appellant was in any manner evaluated different from other students because of her sex. With regard to appellant's physical appearance, this in and of itself did not cause her to be evaluated any differently than any of the other students. We agree with this finding.

court exercised its authority pursuant to rule 17A.19(7) in ordering the taking of new evidence. Extensive evidence was taken. The record itself is voluminous. The appendix submitted with the case alone is 1800 pages in three bound volumes. She was afforded a full and fair opportunity to confront and cross-examine witnesses. She was allowed to present evidence, including medical school records and data. Apparently she took full advantage of this opportunity.[4]

The trial court determined, after taking this voluminous evidence and viewing the witnesses presented, that Karen R. Lunde had been dismissed solely for academic reasons. It found gender discrimination played no role in her dismissal from medical school. We determine, as did the United States Supreme Court in *Horowitz*, Karen R. Lunde has been afforded the required procedural due process in the present case.[5] We agree with the trial court that she is not entitled to contested case proceedings.

The appellant, in passing, contends she "was illegally and without due process deprived of a recognized liberty interest." Like in *Horowitz*, we need not decide whether appellant's dismissal deprived her of a liberty interest in pursuing a medical career nor need we decide whether appellant's dismissal infringed any other interest constitutionally protected against deprivation without procedural due process. Even if we assumed the existence of a liberty or property interest, appellant, like in *Horowitz*, has been afforded at least as much due process as the fourteenth amendment requires. She was fully informed of the faculty's dissatisfaction with her progress. The ultimate decision to dismiss was careful and deliberate. She was afforded an extensive hearing before the district court. In reaching this result, we do not agree with the appellant that our holding in this respect is contrary to our supreme court's decision in *Citizens' Aide/Ombudsman v. Rolfes*, 454 N.W.2d 815 (Iowa 1990).

### III. *Academic Dismissal.*

Turning to the issue of academic dismissal, the United States Supreme Court in *Horowitz* noted: "The educational process is not by nature adversary; instead it centers around a continuing relationship between faculty and students 'one in which the teacher must occupy many roles—educator, adviser, friend, and, at times, parent-substitute.'" *Horowitz*, 435 U.S. at 90, 98 S.Ct. at 955, 55 L.Ed.2d at 135 (quoting *Goss v. Lopez*, 419 U.S. at 594, 95 S.Ct. at 746, 42 L.Ed.2d at 746). In that case, it is further noted that "whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." *Id.*

In the case at bar, the record reveals Karen R. Lunde had been experiencing problems in medical school since her first year. She is obviously a bright young woman. She attended school in Ames and Ankeny, Iowa, and graduated from Ankeny High School in the top three percent of her class. She was sixteen years old at the time of graduation. Immediately after graduation, she enrolled in biomedical engineering and graduated from the University of Iowa College of Engineering in May 1985 with honors (highest distinction) and a 3.87 grade average (out of a 4 point possibility).

She entered the College of Medicine in August of 1985. During her first year and

---

**4.** We recognize appellant's argument that she did not "accept the hearing ... as the equivalent of or in substitution of the contested case hearing" she claims she is entitled to. Nonetheless, the hearing was held, the appellant participated and was afforded the opportunity to make her record.

**5.** We agree, of course, with appellant that once it is determined that due process applies, the question remains what process is due. *Goss v.* *Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)). We also agree that in the analysis of the problem at hand section 17A.1(2) and the subsequent sections of that chapter must be considered. But when those sections are considered in light of the holding in *Horowitz*, we reach the conclusion that appellant did receive the process due her.

subsequent years, problems surfaced regarding her ability to relate with others, inappropriate behavior, falling asleep in classes, and apparent inability to correctly synthesize information and separate the relevant from the irrelevant. It was suggested at the end of her first year of medical school that she take a leave of absence in order to achieve some personal stability. Her mother immediately objected to the taking of such a leave. She therefore continued her studies at medical school and continued to have problems with other students and the faculty. Her episodes of sleeping in class also continued.

It was during the third year of medical school that her problems were brought to a head. She experienced problems with her clinical professors and apparently other residents and students on her third-year clinical rotations. Many of these professors reported she was aggressive and inappropriate in her relations with other medical health professionals. She also apparently continued to have problems synthesizing information and winnowing extraneous material. Her inability to operate in a clinical setting resulted in her failing several rotations. She was subsequently put on academic probation. She was allowed to retake her clinical rotations in an effort to afford her an opportunity to pass them. She once again failed some of her rotations.

At this juncture, the medical school decided to dismiss her from medical school for academic reasons. The Board of Regents concurred on appeal. She then appealed this case to the district court. The district court affirmed the medical school's decision.

The United States Supreme Court addressed almost the identical issue in *Horowitz*. The Supreme Court declared the ability to function in a clinical setting, including interaction with other health professionals, was an appropriate academic consideration. *Id.* 435 U.S. at 89–90, 98 S.Ct. at 955, 55 L.Ed.2d at 135. It declared the academic professionals in clinical rotations were uniquely qualified to decide a medical student's academic standing. *Id.*

The decision to dismiss respondent ... rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires as expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making.

Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. ... We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship. We recognize, as did the Massachusetts Supreme Judicial Court over 60 years ago, that a hearing may be "useless or harmful in finding out the truth as to scholarship." *Barnard v. Inhabitants of Shelburne*, 216 Mass. [19], at 23, 102 N.E. [1095], at 1097 [ (1913) ].

*Horowitz*, 435 U.S. at 90, 98 S.Ct. at 955, 55 L.Ed.2d at 135.

In a later case the Supreme Court once again refused to interfere in a medical school's academic dismissal of a student. *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). In that case, the Court wrote:

When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. *Cf.*

*Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, [2462] 73 L.Ed.2d 28 (1982).

Considerations of profound importance counsel restrained judicial review of the substance of academic decisions. ...

*Ewing,* 474 U.S. at 225, 106 S.Ct. at 513, 88 L.Ed.2d at 532 (quoted with approval in *North v. State,* 400 N.W.2d 566, 569 (Iowa 1987)).

In a footnote in *Ewing,* the Supreme Court went on to say:

> Academic freedom thrives not only on the independent and uninhibited exchange of ideas among teachers and students, but also, and somewhat inconsistently, on autonomous decision making by the academy itself. Discretion to determine, on academic grounds, who may be admitted to study, has been described as one of "the four essential freedoms" of a university.

*Id.* 474 U.S. at 226 n. 12, 106 S.Ct. at 513, 88 L.Ed.2d at 533 (citations omitted). We note the Iowa Supreme Court has adopted the stance of the United States Supreme Court concerning academic dismissals. *See North,* 400 N.W.2d at 569.

 We, too, are reluctant to override the faculty's academic decision in the absence of significant evidence showing a failure to exercise their professional judgment. Their evaluation of Karen R. Lunde's ability to perform on her clinical rotations was clearly within their professional purview. Given the clear import of *Horowitz* and the evidence in this case concerning the inappropriateness of Karen R. Lunde's behavior and her inability to interact with other health professionals on her clinical rotations, we affirm her dismissal by the medical school for academic reasons.

## IV. *Conclusion.*

We determine the agency and trial court did not err in refusing to grant contested case status pursuant to Iowa Code chapter 17A. We determine Karen R. Lunde was granted more than adequate procedural due process. We affirm the medical school's decision dismissing her for aca-

demic reasons. We are unable to find that its action was unreasonable, arbitrary, or capricious, nor can it be characterized as an abuse of discretion or as a clearly unwarranted exercise of discretion.

As the United States Supreme Court stated in *Horowitz,* "courts are particularly ill-equipped to evaluate academic performance." The factors discussed by us in the preceding pages with respect to procedural due process speak "a fortiori here and warn against any such judicial intrusion into academic decisionmaking." *Id.* We determine any other issues the parties may have raised are either covered by this opinion or are without merit. Costs of this appeal are taxed to Karen R. Lunde.

AFFIRMED.