GREENWOOD MANOR, Lantern Park Nursing and Rehab Center and Parkview Manor, Appellants,

v.

IOWA DEPARTMENT OF PUBLIC HEALTH, STATE HEALTH FACILITIES COUNCIL, Appellee,

and

Coralville Manor, RFMS, Inc., Intervenor.

No. 00–0994.

Supreme Court of Iowa.

April 3, 2002.

Robert F. Holz of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Heather L. Adams, Assistant Attorney General, for appellee.

Robert J. Baudino, Jr. and Kelly D. Hamborg of the Baudino Law Firm, P.C., Des Moines, for intervenor.

CADY, Justice.

This appeal requires us to determine whether persons affected by an application for a certificate of need requesting permission to construct a new institutional health facility are entitled to an evidentiary hearing prior to the evaluation of the application by the State Health Facilities Council pursuant to Iowa Code section 135.66 (1999). After holding a public hearing on the application in this case, the Council granted the certificate for construction of the facility. Three nursing centers located within the geographical area of the proposed facility petitioned for judicial review. On judicial review, the district court upheld the Council's decision to grant the certificate. The district court found an evidentiary hearing was not required because the action of the Council in evaluating the application did not constitute a contested case. On our review, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

The dispute in this case centers on the decision of the State Health Facilities Council to grant a certificate of need to Coralville Manor, L.L.C. The certificate of need proposed construction of a 120–bed skilled nursing facility in Coralville, Iowa. Coralville is located near the city of Iowa City, and is a part of Johnson County. The proposed facility would consist of four distinct patient care areas. Twenty-eight beds would be devoted to a chronic confusion and dementing illness (CCDI) unit. The CCDI unit would primarily care for patients with Alzheimer's disease, and would be separate from the other three units in the facility. The CCDI unit would be aesthetically designed to minimize the disorientation and agitation ordinarily suffered by those afflicted with dementia, particularly Alzheimer's patients.

The other three units would be composed of intermediate and skilled nursing care patients. One unit would provide intense rehabilitation services, including treatment for stroke victims. Although the entire facility would be certified by Medicaid, twenty beds would be specifically allotted to Medicare/Medicaid patients. Additionally, the facility would have occupational and physical therapy rooms that would provide outpatient services to former residents who have been successfully rehabilitated but still require continuing treatment.

The proposed site of the facility is a five-acre plot of land on Heartland Drive. It is a central location for the residents of Johnson County and the surrounding counties, and is easily accessible by the metropolitan area's interstate and state highways. Coralville Manor also has an option to purchase twenty-five undeveloped acres adjacent to the five-acre plot. Eventually, Coralville Manor would convert the additional twenty-five acres into a retirement community. In addition to the nursing

facility, the campus would contain independent living, assisted living, and general retirement centers. The purpose of the campus atmosphere is to permit senior citizens to retire to an area where they can move to different living units to accommodate changes in their physical or mental condition.

Donald Fike is the sole owner of Coralville Manor. He is also the sole owner of RFMS, Inc., which has been providing services similar to those proposed by Coralville Manor since 1981. Fike owns and operates over 100 facilities in Iowa, Illinois, Florida, Nevada, and South Carolina. Thirteen of these facilities are nursing homes, some of which have special units providing care to Alzheimer's patients. Many of these nursing facilities are included in a retirement community campus.

Fike determined a need existed in the Johnson County area for a nursing facility specially equipped for treating those afflicted with dementing illnesses. He based this determination on several factors. First, none of the seven nursing facilities in Johnson County had a CCDI unit. Furthermore, the CCDI units in neighboring counties were at or near full capacity. Moreover, the closest CCDI unit was in Cedar Rapids, and that facility only served private pay patients.

In addition, Fike believed Johnson County needed more long-term care beds for the general treatment of aging seniors. The state bed need formula projected a need for 121 long-term care beds in Johnson County. The state bed need formula estimates the number of long-term nursing beds necessary to adequately serve a county's projected population in five years. *See* Iowa Admin. Code r. 641–203.5(3)(a)(1), (2) (1987). The Department of Public Health is charged with updating

the long-term care bed need calculations each year. *Id.* r. 641–203.5(3)(a)(4). The Council, which is a division of the Department, then uses the figure as a guideline in its review of a certificate of need application. *See id.* r. 641–203.5(3)(c).

Fike also conducted a phone survey of the seven local nursing facilities in June, September, and December 1998. In each of these months, the vacancy bed total never exceeded six beds. Fike also relied on the reported occupancy rates of the seven facilities over eight quarters. Three of the facilities consistently reported occupancy rate levels near 100%, two between 85 and 90%, and one between 77 and 84%. Although one of the facilities reported levels consistently below 50%, the administrator of that facility testified the occupancy rates have never been that low. In any event, the overall reporting rate for Johnson County, excluding the latter facility's rates, was 90%. Generally, a nursing facility is considered to be operating at full capacity when its occupancy rates reach the level of 85 to 90%. Fike considered these statistics with other facts showing that Johnson County has the fastest growing elderly population in the state of Iowa.

Coralville Manor filed a letter of intent for the construction of the 120–bed skilled nursing facility in Coralville on January 8, 1998. It received an extension for the letter on December 30, 1998. *See id.* r. 641–202.2(4) (1997) (letter of intent expires one year after its receipt by the Department, but is subject to renewal). The Department received Coralville Manor's formal application on February 25, 1999. Contemporaneously with the filing of the application, Coralville Manor notified each of the seven Johnson County nursing facilities of the submission of its certificate of need application. Additionally, the De-

partment sent written notice of the application to all persons deemed to be affected by Coralville Manor's application. The Department invited the affected persons to comment on the application, either through written statements or an oral presentation to the Council at the hearing on the application. The Department subsequently received numerous letters challenging and supporting the certificate of need.

The Department scheduled a public hearing on the application for June 10, 1999. On the day preceding the hearing, Greenwood Manor,[1] Parkview Manor,[2] and Lantern Park Nursing and Rehab Center[3] filed a motion for a contested case proceeding. These three facilities are located in the geographic area of the proposed facility and, consequently, are considered affected persons. *See* Iowa Code § 135.61(1)(c) (institutional health facilities "located in the geographic area which would appropriately be served by the new institutional health service proposed in the application" are considered affected persons in certificate of need proceedings). The facilities claimed the decision to grant or deny a certificate of need is a contested case proceeding and, therefore, the Council was required to hold an evidentiary hearing. The Council denied the motion.

Numerous witnesses testified at the hearing on June 10. In addition to Fike, the health care planning consultant to Coralville Manor, the local economic developer for the Coralville area, and the mayor and the city administrator for the city of Coralville testified in support of the project. These witnesses revealed that the acreage where Coralville Manor planned to build its retirement campus had been specifically identified by the city of Coralville for the development of senior services. In 1997, the city enacted a plan to set aside an area of undeveloped acreage for continuing care retirement centers. The city officials believed the Coralville Manor development matched the plan's objectives and was needed by the community. In fact, the Coralville City Council adopted a resolution on May 25, 1999, supporting the Coralville Manor nursing home project.

Nine affected parties challenged the certificate. Eight of the parties were operators or administrators of neighboring nursing care facilities. Each person's testimony echoed two main concerns: a recent decrease in occupancy rates and shortages in health care professionals. They attributed the occupancy rate decreases to the recent surge in popularity of assisted living and independent living centers. Additionally, they detailed the difficulties they often encountered in satisfying their staffing needs, blaming the national shortage in health care personnel. The facility representatives believed their facilities adequately served the community, including those with dementing illnesses, and feared a new center would force them to compete for nurses and certified

---

1. Greenwood Manor is an eighty-seven-bed intermediate and skilled care nursing facility on the west side of Iowa City. Twelve of the beds are licensed for Medicare patients. The facility was built in 1964.

2. Parkview Manor is a ninety-four-bed facility providing intermediate and skilled nursing care services, as well as stroke rehabilitation treatment. It is located in Wellman, which is twenty-five miles south of Iowa City. Wellman is not a part of Johnson County.

3. Lantern Park Nursing and Rehab Center is a 100–bed intermediate and skilled nursing care center in Coralville, with treatment for stroke and Medicaid patients. Lantern Park was established approximately thirty years ago.

nurses aides. A representative from All Staff Medical, a medical staffing agency, shared the staffing concerns espoused by the facilities, and elaborated on the specific difficulties she experienced attempting to fill medical employment positions in Johnson County.

In his testimony, Fike acknowledged the recent emergence of assisted living centers in Iowa City. However, Fike did not believe assisted living centers would detract from nursing facilities, because the two centers serve different community needs. For example, a person afflicted with advanced Alzheimer's disease or recovering from a severe stroke would not receive the necessary treatment in an assisted living center. Fike also recognized the concern over the availability of staff, but believed a good operator would get the necessary staff, as he had done at his other facilities. Moreover, Fike submitted several letters from area health care professionals seeking an employment position with Coralville Manor upon its opening.

After discussing their comments on the application in the presence of the parties, three of the four Council members approved Coralville Manor's application. On July 2, 1999, the Council filed its written decision granting the certificate of need.

Greenwood Manor, Parkview Manor, and Lantern Park Nursing and Rehab Center petitioned for judicial review pursuant to section 17A.19. The district court concluded there was substantial evidence in the record to support the Council's decision to grant the certificate of need. Additionally, the district court found the evaluation of the certificate of need application did not constitute a contested case proceeding.

The three affected parties appeal. They claim they have a statutory and constitutional right to a contested case proceeding, and the denial of that right by the Council was unreasonable, arbitrary, and an abuse of discretion. Alternatively, the affected parties contend the Council should not have granted Coralville Manor's certificate of need.

## II. Standard and Scope of Review.

■ We review a district court decision on a petition for judicial review pursuant to section 17A.19 for errors at law. *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 763 (Iowa 1998). Thus, our review is limited to whether the district court correctly applied the law. *Dickinson County v. City Dev. Comm.*, 521 N.W.2d 466, 468 (Iowa 1994); *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 281 (Iowa 1991); *Mercy Health Ctr. v. State Health Facilities Council*, 360 N.W.2d 808, 811 (Iowa 1985). We will affirm if we reach the same conclusions as the district court. *Dickinson County*, 521 N.W.2d at 468. To determine whether our conclusions are aligned with those of the district court, we look to the standards of section 17A.19(8). *Office of Consumer Advocate*, 465 N.W.2d at 281.

■ Section 17A.19(8) directs us to grant whatever relief we deem to be appropriate when the decision of an agency is:

*a.* In violation of constitutional or statutory provisions;

*b.* In excess of the statutory authority of the agency;

*c.* In violation of an agency rule;

*d.* Made upon unlawful procedure;

*e.* Affected by other error of law;

*f.* In a contested case, unsupported by substantial evidence in the record made

before the agency when that record is viewed as a whole; or

g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Because we find the proceeding in this case did not involve a contested case, we do not consider whether the decision was supported by substantial evidence under section 17A.19(8)(f). *See id.* § 17A.19(8)(f); *Bernau,* 580 N.W.2d at 764; *Sindlinger v. Iowa State Bd. of Regents,* 503 N.W.2d 387, 390 (Iowa 1993). Instead, we only look to whether the agency committed an error of law or acted unreasonably, capriciously, or arbitrarily. *Sindlinger,* 503 N.W.2d at 390.

When determining whether "other agency action" was arbitrary or capricious, we consider whether the decision "was without regard to the law or facts." *Bernau,* 580 N.W.2d at 764. We will deem agency action to be unreasonable if the agency acted " 'in the face of evidence as to which there is no room for difference of opinion among reasonable minds ... or not based on substantial evidence.' " *Citizens' Aide/Ombudsman v. Rolfes,* 454 N.W.2d 815, 819 (Iowa 1990) (citation omitted). Thus, the unreasonableness standard of reviewing "other agency action" may still require us to consider whether the decision was based on substantial evidence.

## III. Overview of Certificate of Need Law.

In 1977, our state legislature established the State Health Facilities Council in response to the National Health Planning and Resource Development Act enacted by Congress in 1974. *See* 42 U.S.C. §§ 300k– 300n (1974) (national act); 1977 Iowa Acts ch. 75, §§ 1–21 (codified at Iowa Code §§ 135.61–.83 (1978)) (Iowa act). The Act required states to promulgate statutes governing the development of new health care services and facilities in order to qualify for federal funding. *See Living Centers–Southeast, Inc. v. N.C. Dep't of Health & Human Servs.,* 138 N.C.App. 572, 532 S.E.2d 192, 193 (2000). Specifically, the states were to create a health planning and development agency to administer a certificate of need program. *In re Application for Certificate of Need by HCA Health Servs. of Wyoming, Inc.,* 689 P.2d 108, 109 (Wyo.1984). In short, the agency would be responsible for determining the need for proposed health services as well as requiring institutions to seek approval before committing substantial capital expenditures to certain projects. *Id.* The certificate of need program subsequently became part of a national trend to place checks on the spiraling health care costs incurred by health institutions while facilitating the provision of economical and quality health care services to the states' citizens. *See, e.g., Carriage Hill Cabin John, Inc. v. Maryland Health Res. Planning Comm'n,* 125 Md.App. 183, 724 A.2d 745, 750 (1999) (Maryland); *Living Centers–Southeast, Inc.,* 532 S.E.2d at 193–94 (North Carolina); *Commonwealth, Dep't of Health v. Rehab Hosp. Servs. Corp.,* 127 Pa.Cmwlth. 185, 561 A.2d 342, 347–48 (1989) (Pennsylvania); *St. Mary's Hosp. v. State Health Planning & Dev. Agency,* 178 W.Va. 792, 364 S.E.2d 805, 808 (1987) (West Virginia); *In re Application for Certificate of Need by HCA Health Servs. of Wyoming, Inc.,* 689 P.2d at 109 (Wyoming).

Similarly, the primary purpose of Iowa's certificate of need statute is to en-

sure that the citizens of this state will receive necessary and adequate institutional health services in an economical manner. *See* 1977 Iowa Acts ch. 75, preamble; *Iowa State Dep't of Health v. Hertko*, 282 N.W.2d 744, 747 (Iowa 1979). To accomplish this purpose, the legislature explicitly instructed the Council to avoid unnecessary duplication of institutional services as well as to control the costs of administering these services. *See id.* To aid the Council, the legislature prescribed detailed procedures governing the application process and delineated specific criteria for the Council to consider in evaluating applications. *See* 1977 Iowa Acts ch. 75, §§ 4–6. Today, the provisions governing applications for certificates of need are found in Iowa Code sections 135.61 through 135.83.

Thus, before a new institutional health facility may be constructed, the sponsor of the facility must receive a certificate of need from the Department. *Id.* § 135.63; *Iowa State Dep't of Health*, 282 N.W.2d at 747. Although there are exemptions from this requirement, none of them are applicable here. *See* Iowa Code § 135.63(2).

Before applying for a certificate of need, the facility's sponsor must submit a letter of intent briefly describing the proposal, its geographic location, and approximate cost. *Id.* § 135.65(1). The sponsor must then file an application no earlier than thirty days after the submission of the letter of intent. *Id.*

After the Department receives the application, it must provide written notice to all "affected persons" of the application. *Id.* § 135.66(2); Iowa Admin. Code r. 641–202.4(4). "Affected persons" include the sponsor of the application as well as each institutional health facility located in the same geographic area as the proposed facility. Iowa Code § 135.61(1)(a), (c). Prior to issuing a decision, the Council must conduct a public hearing on the propriety of the certificate. *Id.* § 135.66(3)(b). All affected persons or their representatives have the opportunity to present testimony to the Council at the public hearing. *Id.* § 135.66(4); Iowa Admin. Code r. 641–202.6(3). In making its determination, the Council must consider eighteen factors delineated in section 135.64(1) [4] and those

---

4. The Council must consider the following factors when reviewing an application for a certificate of need:

   a. The contribution of the proposed institutional health service in meeting the needs of the medically underserved, . . . as well as the extent to which medically underserved residents in the applicant's service area are likely to have access to the proposed institutional health service.

   b. The relationship of the proposed institutional health services to the long-range development plan, if any, of the person providing or proposing the services.

   c. The need of the population . . . to be served. . . .

   d. The distance, convenience, cost of transportation, and accessibility to health services for persons who live outside metropolitan areas.

   e. The availability of alternative, less costly, or more effective methods of providing the proposed institutional health services.

   f. The immediate and long-term financial feasibility of the proposal . . . as well as the probable impact of the proposal on the costs of and charges for providing health services by the person proposing the new institutional health service.

   g. The relationship of the proposed institutional health services to the existing health care system of the area in which those services are proposed to be provided.

   h. The appropriate and efficient use or prospective use of the proposed institutional health service, and of any existing similar services, including but not limited to a consideration of the capacity of the sponsor's facility to provide the proposed service, and possible sharing or cooperative arrange-

additional, but nearly identical, considerations listed in administrative rule 641–203.5(3)(c) (1987). In addition, the Council can grant an application only if it makes four statutorily mandated findings listed in Iowa Code section 135.64(2).[5]

Lastly, the written decision of the Council is considered final agency action. *Id.* § 135.70; Iowa Admin. Code r. 641–202.11(2)(b) (1997). A dissatisfied person has the option of either requesting a rehearing with the Council or petitioning for judicial review in accordance with section 17A.19. *See* Iowa Code § 135.70; Iowa Admin. Code r. 641–202.9(1). An affected person need not first have a rehearing application denied in order to petition for judicial review. *See* Iowa Admin. Code r. 641–202.9(6).

## III. Contested Case Proceedings.

The Iowa Administrative Procedure Act, embodied in Iowa Code chapter 17A, classifies agency action within three distinct categories: "rulemaking;" "adjudication," otherwise known as contested case; and "other agency action." *Sindlinger,* 503 N.W.2d at 389; *Allegre v. Iowa State Bd. of Regents,* 349 N.W.2d 112, 114 (Iowa 1984); *Polk County v. Iowa State Appeal Bd.,* 330 N.W.2d 267, 276 (Iowa 1983). The classification of the agency action determines whether the provisions of chapter 17A govern the action. Rulemaking and contested cases fall within the ambit of the Iowa Administrative Procedure Act. Iowa Code § 17A.1(2). However, only the judicial review provisions of section 17A.19

---

ments among existing facilities and providers.

*i.* The availability of resources, including, but not limited to, health care providers, management personnel, and funds for capital and operating needs....

*j.* The appropriate and nondiscriminatory utilization of existing and available health care providers....

*k.* The relationship, including the organizational relationship, of the proposed institutional health services to ancillary or support services.

*l.* Special needs and circumstances of those entities which provide a substantial portion of their services or resources, or both, to individuals not residing in the immediate geographic area in which the entities are located....

*m.* The special needs and circumstances of health maintenance organizations.

*n.* The special needs and circumstances of biomedical and behavioral research projects designed to meet a national need and for which local conditions offer special advantages.

*o.* The impact of relocation of an institutional health facility ... on other institutional health facilities ... and on the needs of the population to be served....

*p.* In the case of a construction project, the costs and methods of the proposed construction and the probable impact of the

proposed construction project on total health care costs.

*q.* [concerns the addition of beds only]

*r.* The recommendations of staff personnel of the department....

Iowa Code § 135.64(1).

5. The Council must make the following findings in order to grant a certificate of need:

*a.* Less costly, more efficient, or more appropriate alternatives to the proposed institutional health service are not available and the development of such alternatives is not practicable;

*b.* Any existing facilities providing institutional health services similar to those proposed are being used in an appropriate and efficient manner;

*c.* In the case of new construction, alternatives including but not limited to modernization or sharing arrangements have been considered and have been implemented to the maximum extent practicable;

*d.* Patients will experience serious problems in obtaining care of the type which will be furnished by the proposed new institutional health service or changed institutional health service, in the absence of that proposed new service.

*Id.* § 135.64(2).

apply to other agency action. *Polk County*, 330 N.W.2d at 276. None of the parties in this case contend the Council's decision constituted rulemaking.[6] Instead, the dispute rests on whether the agency action implicated the contested case provisions of section 17A.12.

A contested case is a proceeding "in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing." Iowa Code § 17A.2(5); *accord Bernau*, 580 N.W.2d at 766; *Messamaker v. Iowa Dep't of Human Servs.*, 545 N.W.2d 566, 567 (Iowa 1996); *Citizens' Aide/Ombudsman*, 454 N.W.2d at 817–18; *Allegre*, 349 N.W.2d at 114; *Polk County*, 330 N.W.2d at 277. On the other hand, other agency action is action that does not constitute rulemaking or a contested case. *Sindlinger*, 503 N.W.2d at 389; *Polk County*, 330 N.W.2d at 276–77. It is a residual category. *Sindlinger*, 503 N.W.2d at 389; *Allegre*, 349 N.W.2d at 114; *Polk County*, 330 N.W.2d at 276. Thus, if the statute or constitution does not require a hearing, or if the required hearing does not rise to the level of an evidentiary hearing, the agency action is considered "other agency action." *Allegre*, 349 N.W.2d at 114; *Polk County*, 330 N.W.2d at 277; *see L'Enfant Plaza Props., Inc. v. Dist. of Columbia Redevelopment Land Agency*, 564 F.2d 515, 524 (D.C.Cir. 1977).

The importance of the distinction between the categories lies in the due process afforded to parties involved in contested case proceedings. *Allegre*, 349 N.W.2d at 114; *Polk County*, 330 N.W.2d at 276. A contested case entitles parties affected by the agency action to an adversarial hearing with the presentation of evidence and arguments and the opportunity to cross-examine witnesses and introduce rebuttal evidence. *See* Iowa Code § 17A.12(4); *Lunde v. Iowa Bd. of Regents*, 487 N.W.2d 357, 359 (Iowa Ct.App. 1992). The underlying purpose of an evidentiary hearing is to adjudicate disputed facts pertaining to particular individuals in specific circumstances. *Polk County*, 330 N.W.2d at 277; Arthur Earl Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 294 (1977) [hereinafter Bonfield]. At most, other agency action entitles affected parties to an informal hearing. *Lunde*, 487 N.W.2d at 359. Parties are only entitled to those procedures voluntarily promulgated by the agency, and to the general requirement that the agency act reasonably. *Farmers State Bank v. Bernau*, 433 N.W.2d 734, 740 (Iowa 1988); Bonfield, 63 Iowa L.Rev. at 290.

We conclude the evaluation of an application for a certificate of need by the Council does not implicate the contested case procedures. Neither a statute nor constitution requires the Council to provide an evidentiary hearing. *See Hurd v. Iowa Dep't of Human Servs.*, 580 N.W.2d 383, 388 (Iowa 1998). Although section 135.66 provides affected persons the opportunity to be heard at a public hearing, Iowa Code § 135.66(3)(b), (4), this hearing does not rise to the level of an evidentiary hearing. The administrative rules governing the Department in certificate of need

---

**6.** "Rulemaking" is "the process for adopting, amending, or repealing a rule." Iowa Code § 17A.2(11).

proceedings explicitly state that public hearings held pursuant to section 135.66(3)(b) do not constitute contested cases. *See* Iowa Admin. Code r. 641–202.6. Furthermore, the administrative rules direct district courts ruling on judicial review petitions to treat the Council's decision as other agency action. *See id.* We accord administrative rules the force and effect of law as long as they are "reasonable and consistent with legislative enactments." *Harlan Sprague Dawley, Inc. v. Iowa State Bd. of Tax Review*, 601 N.W.2d 66, 69 (Iowa 1999); *First Iowa State Bank v. Iowa Dep't of Natural Res.*, 502 N.W.2d 164, 168 (Iowa 1993). This well-established principle is supported by the legislature's delegation of authority to the Council to establish rules not inconsistent with the law that will aid the Council in the enforcement of the certificate of need law provisions. *See* Iowa Code § 135.11(13); *id.* § 135.72. We have previously upheld an agency's provision of less formal hearing procedures than those established in section 17A.12. *See, e.g., Sindlinger*, 503 N.W.2d at 390.

Additionally, we find the legislature did not intend to create a contested case proceeding when it enacted the comprehensive certificate of need statute. We recognize the legislature does not need to expressly provide for an evidentiary hearing in order to find the requirement of a contested case. *Allegre*, 349 N.W.2d at 115; Bonfield, 63 Iowa L.Rev. at 312. Yet, we fail to discern any basis in the statute or its factual context impliedly requiring an evidentiary hearing. *See id.* In fact, by using the word "public" in Iowa Code section 135.66(3)(b) to qualify the type of hearing provided to affected persons, and by giving affected persons the right to present testimony, *id.* § 135.66(4), the legislature evidenced its

intent to exclude the evaluation of a certificate of need application from the contested case requirements. If the legislature wanted to provide for a contested case, it could have so provided. *See S.E. Iowa Coop. Elec. Ass'n v. Iowa Utils. Bd.*, 633 N.W.2d 814, 822 (Iowa 2001); *State v. Rodenburg*, 562 N.W.2d 186, 188 (Iowa 1997). For example, the legislature specifically commands the Council to adhere to "contested case procedures in accordance with chapter 17A" when determining what sanctions to impose on those who fail to obtain a certificate of need prior to constructing a new health institution and those who violate the terms of an approved certificate. Iowa Code § 135.73(2)(a), (b). Moreover, we are guided by the maxim "expressio unius est exclusio alterius," *i.e.*, the "expression of one thing is the exclusion of another" thing not similarly mentioned. *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995); *accord Callender v. Skiles*, 591 N.W.2d 182, 186 (Iowa 1999). Clearly, the use of completely different language in sections 135.66 and 135.73 reflects the deliberate choice of the legislature to provide two different types of hearings for two different types of situations. *See Farmers State Bank*, 433 N.W.2d at 739; *see also Marcus*, 538 N.W.2d at 289 (the legislature expresses its intent through the omission as well as the inclusion of certain terms); *Callender*, 591 N.W.2d at 186 (same). As always, we are guided by what the legislature said, not what it could have said. *Marcus*, 538 N.W.2d at 289.

Because the statute governing applications for certificates of need does not mandate an evidentiary hearing, there is no statutory right to contested case proceedings. *See Bernau*, 580 N.W.2d at 767. Consequently, we next address whether affected persons have a constitutional right

to an adjudicatory hearing. *See id.* We examine both the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution to determine whether a contested case proceeding is constitutionally required when reviewing certificate of need applications. *See id.; Sindlinger,* 503 N.W.2d at 390. For purposes of our review, we deem the Due Process Clauses of our state and federal constitutions to be identical in scope, import, and purpose. *See Callender,* 591 N.W.2d at 187.

■■■■ Generally, a person has a constitutional due process right to an evidentiary hearing in accordance with contested case procedures if the underlying proceeding involves adjudicative facts. *See Bernau,* 580 N.W.2d at 767; *Office of Consumer Advocate,* 465 N.W.2d at 284; *Hollinrake v. Iowa Law Enforcement Academy,* 452 N.W.2d 598, 602 (Iowa 1990); *Allegre,* 349 N.W.2d at 115. Conversely, if the agency decision rests on legislative facts, the parties are not constitutionally entitled to an evidentiary hearing. *See Bernau,* 580 N.W.2d at 767; *Hollinrake,* 452 N.W.2d at 602. Thus, whether due process demands an agency to provide affected persons in certificate of need proceedings an evidentiary hearing depends upon whether the proceedings involve adjudicative or legislative facts.

■■■■ Adjudicative facts relate to the specific parties and their particular circumstances. *Hollinrake,* 452 N.W.2d at 602; *Allegre,* 349 N.W.2d at 115. They involve individualized facts peculiar to the parties, and ordinarily " 'answer the questions of who did what, where, when, how, why, with what motive or intent.... ' "

*Allegre,* 349 N.W.2d at 115 (quoting Bonfield, 63 Iowa L.Rev. at 323 (footnotes omitted)). Legislative facts, on the other hand, do not pertain to the specific parties. *Id.* Instead, legislative facts are generalized factual propositions, often consisting of demographical data and statistics compiled from surveys and studies, which aid the decision-maker in determining questions of policy and discretion. *See Bernau,* 580 N.W.2d at 767; *Allegre,* 349 N.W.2d at 115; *Polk County,* 330 N.W.2d at 277; *see also Chevy Chase Citizens Ass'n v. Dist. of Columbia Council,* 327 A.2d 310, 313–14 (D.C.1974) (hearing is legislative in nature when the agency seeks to make policy decisions affecting the general public, or a substantial portion thereof, instead of individual parties); *McMurray v. City Council of West Des Moines,* 642 N.W.2d 273, 277 (Iowa 2002) (legislative facts "involve a determination of what is in the best interests of the public generally").

■■■■ We conclude the public hearing on a certificate of need application involves the presentation of legislative facts. The criteria of section 135.64, which the Council is to consider and rely upon in its evaluation, consist largely of generalized facts and statistical data. In determining the need for the proposed facility or service, the Council is to examine the projections derived from the state bed need formula. *See* Iowa Admin. Code r. 641–203.5(3)(c) (1987). Furthermore, the Council is to consider the availability of adequate resources and of current facilities and services, the relationship of the proposed facility to existing facilities, the geographic area, the accessibility of the facility, the proposed Medicaid utilization, construction costs, current utilization of existing health care providers, and the fi-

nancial feasibility of the project, among others. *See* Iowa Code § 135.64(1); Iowa Admin. Code r. 641–203.5(3)(c), (5). The Council also reviews a report compiled by Department staff, which evaluates the specific application against the criteria of section 135.64. *See* Iowa Admin. Code r. 641–202.4(5) (1997) (Council is to receive staff report at least ten days prior to the scheduled public hearing); *see also Chevy Chase Citizens Ass'n*, 327 A.2d at 314 (when agency decision involves consultation of staff reports, this factor weighs in favor of finding the hearing to be legislative in nature). Even if the Council does consider individualized information from affected parties when evaluating the legislative-type data, the Council is not adjudging the individual parties' legal rights. *See Hollinrake*, 452 N.W.2d at 602; *see also* Bonfield, 63 Iowa L.Rev. at 291–92 (agency action which affects an individual party's legal rights constitutes a contested case).

▬ Moreover, even if we found the public hearing of section 135.66 involves the presentation of adjudicative facts, it would fall within two of the exceptions to the evidentiary hearing requirement for proceedings involving adjudicative facts. *See Allegre*, 349 N.W.2d at 115. First, an evidentiary hearing is unnecessary when there are no disputed relevant facts. *Id.* at 116. In essence, the parties in this case do not dispute the relevant facts. *See Office of Consumer Advocate*, 465 N.W.2d at 284; *Allegre*, 349 N.W.2d at 116. In challenging the need for the proposed facility, the existing facilities focused their opposition on staffing shortages in the health care profession. Fike did not dispute this contention, and, in fact, conceded staffing for the new facility would present a potential obstacle.

▬ Second, an evidentiary hearing is unnecessary when the alleged interest of the party seeking a contested case cannot be described as a life, liberty, or property interest under the Due Process Clause. *Allegre*, 349 N.W.2d at 115; Bonfield, 63 Iowa L.Rev. at 325. As with all procedural due process inquiries, we must first determine whether the party has a protected interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 907, 47 L.Ed.2d 18, 31 (1976); *Bowers v. Polk County Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002). The affected parties in this case claim they have a protected property interest in another party's certificate of need application. We will find a property interest only if there is a legitimate claim of entitlement. *13 Southfield Assocs. v. Michigan Dep't of Pub. Health*, 82 Mich.App. 678, 267 N.W.2d 483, 486 (1978) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)). A mere abstract desire or unilateral expectation of receiving a benefit are insufficient to establish an entitlement. *Id.*

▬ The record in this case fails to demonstrate the establishment of a property interest in a certificate of need application. Although the three petitioning nursing facilities allege they have a property interest in operating their facilities, that alleged interest is not involved in a proceeding involving the issuance of a certificate of need to a competing institution. *See Cathedral Rock of Granite City, Inc. v. Illinois Health Facilities Planning Bd.*, 308 Ill.App.3d 529, 242 Ill.Dec. 158, 720 N.E.2d 1113, 1121 (1999). The issuance of a certificate of need does not prohibit the existing local facilities from continuing their operations. *See id.* We acknowledge that the actual issuance of a certificate of need conveys a property interest on the holder of the certificate. *Downriver*

*Nursing Assocs. v. Michigan Dep't of Pub. Health,* 193 Mich.App. 594, 484 N.W.2d 748, 751 (1992). This is evident from the procedural safeguards provided to certificate-of-need-holders faced with the potential revocation or suspension of their certificates. *See* Iowa Code § 135.73 (Council must invoke contested case procedures before revoking or suspending certificate of need); *Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1121 (no entitlement to due process protections unless the agency's action is directed at the long-term care facilities' own certificate of need); *Mercy Med. Ctr., Inc. v. Office of Health Policy,* 121 Or.App. 587, 855 P.2d 1156, 1159 n. 6 (1993) (State cannot revoke certificate of need without providing contested case procedures). Nonetheless, until the certificate is issued, the applicant is in the same position as the other affected parties. *See In re Certificate of Need Granted to the Harborage,* 300 N.J.Super. 363, 693 A.2d 133, 144 (App.Div.1997) (applicant has "no more than an expectation that it would receive the [certificate of need]"). Thus, at the public hearing on a certificate of need application, neither the applicant nor the other affected parties have a protected property interest.

■ The three petitioning nursing facilities essentially contend they are entitled to be free from the construction of a new facility because it would infringe upon their existing certificates. However, the interest in keeping a certificate is not equivalent to the interest in precluding potential competitors from providing the same services. *Mercy Med. Ctr., Inc.,* 855 P.2d at 1159 n. 6; *see Downriver Nursing Assocs.,* 484 N.W.2d at 751. An existing care facility does not have a protected property interest in being a competitor of another long-term care facility. *See Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1120–21; *Mercy Med. Ctr., Inc.,* 855 P.2d at 1159 (legislature did not create "an entitlement to a government sanctioned monopoly"). If we recognized such a property interest, we would contravene the legislature's goal of ensuring the provision of necessary and adequate health services at a reasonable cost. *See In re Application by St. Luke's Hosp.,* 414 N.W.2d 297, 299 (S.D.1987).

■ Even if we assumed affected parties have a protected property interest, they are afforded sufficient due process through the public hearing. *See Sindlinger,* 503 N.W.2d at 390; *Lunde,* 487 N.W.2d at 361; *see also Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1122 (affected persons provided notice of the certificate of need application, the right to present testimony at a public hearing, and the right to seek judicial review). The public hearing provides affected parties an opportunity to present testimony and, at the same time, a review by the Council of their specific challenges. *See Alfredo v. Iowa Racing & Gaming Comm'n,* 555 N.W.2d 827, 833 (Iowa 1996); *Sindlinger,* 503 N.W.2d at 390; *see also Hurd,* 580 N.W.2d at 388–89 (finding interests to be adequately protected by the opportunity to present evidence and information refuting other party's evidence); *Hale v. Petit,* 438 A.2d 226, 232 (Me.1981) (cross-examination would not have provided additional benefit to certificate of need proceeding where parties provided sufficient opportunity to present evidence). Additionally, affected parties may submit written statements to be considered by the Council in its review of the application. *See* Iowa Admin. Code r. 641–202.6(2), (4). Lastly, parties dissatisfied with the Council's decision may request the Council to

reconsider its ruling or seek judicial review. *See* Iowa Code § 135.70.

Because the Council was not required by statute or constitution to provide an evidentiary hearing, the Council did not abuse its discretion or act unreasonably or arbitrarily in denying the three petitioning facilities' motion for contested case proceeding. The district court properly concluded the review of a certificate of need application is not a contested case.[7]

## IV. Decision to Grant Certificate of Need.

■ In reviewing the Council's decision to grant Coralville Manor's certificate of need, we must keep in mind that our review of the Council's decision is severely circumscribed. *See On With Life, Inc. v. State Health Facilities Council,* 532 N.W.2d 496, 497 (Iowa Ct.App.1995). We ordinarily defer to the expertise and experience of the agency, particularly in areas where the legislature has delegated considerable discretion to the agency. *See S.E. Iowa Coop. Elec. Ass'n,* 633 N.W.2d at 818; *In re Certificate of Need Granted to the Harborage,* 693 A.2d at 141. Thus, "judgment calls are the province of the [agency] and not of the courts." *Mercy Health Ctr.,* 360 N.W.2d at 809; *accord On With Life, Inc.,* 532 N.W.2d at 497.

■ The petitioning nursing facilities claim the Council ignored the requisite

---

7. We observe some courts have found a certificate of need proceeding to constitute a contested case. *See, e.g., Carriage Hill Cabin John, Inc.,* 724 A.2d at 751; *Living Centers–Southeast, Inc.,* 532 S.E.2d at 193; *St. Mary's Hosp.,* 364 S.E.2d at 808; *In re Application for Certificate of Need by HCA Health Servs. of Wyoming, Inc.,* 689 P.2d at 113–14. However, the legislatures in most of those states have enacted statutes specifically directing courts to treat certificate of need proceedings as contested cases. *See Living Centers–Southeast, Inc.,* 532 S.E.2d at 193; *St. Mary's Hosp.,* 364 S.E.2d at 808. *But see In re Application for Certificate of Need by HCA Health Servs. of Wyoming, Inc.,* 689 P.2d at 113–14 (finding "public meeting" requirement, as interpreted with the federal requirements, entitled persons affected by certificate of need application to a contested case). Furthermore, some of those states do not permit applications for certificates of need until the public health agency publicly identifies the need for a specific facility or service. *See Carriage Hill Cabin John, Inc.,* 724 A.2d at 749; *Living Centers–Southeast, Inc.,* 532 S.E.2d at 194. Consequently, in most circumstances, the agency in charge of certificate of need proceedings must review competing applications for the granting of one certificate. *See Carriage Hill Cabin John, Inc.,* 724 A.2d at 751 (Commission must conduct comparative review process of competing applications to determine "which of the applicants best satisfied the criteria"); *Living Centers–Southeast, Inc.,* 532 S.E.2d at 194, 197 (finding "genuine issues of fact as to who is the superior applicant" will always arise when agency reviews two or more certificate of need applications vying for the issuance of the same certificate). Notwithstanding, we are not the first court to find certificate of need proceedings do not implicate the formal hearing requirements of contested cases. *See, e.g., Hale,* 438 A.2d at 231 (even where parties are competing for a certificate of need, "the statutory scheme of [Maine's] Certificate of Need Law as a whole indicates a legislative intent that the hearing and review process be separate from the [Administrative Procedure Act]"); *In re Application by St. Luke's Hosp.,* 414 N.W.2d at 298 (South Dakota has special rules governing certificate of need applications, which are an exception to the Administrative Procedure Act).

Moreover, we cannot contemplate what additional benefits the petitioning nursing facilities in this case would have received from cross-examining witnesses. *Hale,* 438 A.2d at 232. The three petitioning facilities took full advantage of their opportunities to present evidence and statements challenging Coralville Manor's application. *See Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1122; *Hale,* 438 A.2d at 232. In short, the petitioning facilities failed to demonstrate how the lack of cross-examination prejudiced them. *See Hale,* 438 A.2d at 232.

statutory criteria and placed undue emphasis on other irrelevant factors, such as fostering competition. Although the Council must consider the eighteen factors delineated in section 135.64(1) in evaluating an application, this list is not exhaustive. *Mercy Health Ctr.,* 360 N.W.2d at 811; *accord Hale,* 438 A.2d at 233. The Council is authorized to consider any factors reasonably related to the purposes of the statute and the specific application. *See Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1124 (agency is free to use its expertise in determining what other considerations are relevant); *Mercy Health Ctr.,* 360 N.W.2d at 811 (Council may consider other factors which directly bear on the factors listed in section 135.64(1)); *Hale,* 438 A.2d at 233 (may consider any factors rationally related to the statute's purpose). As mentioned, the legislature declared its objective in creating the Council was to provide orderly, economical, and adequate institutional health services that are accessible, both physically and economically, to all citizens of our state. *See Mercy Health Ctr.,* 360 N.W.2d at 811. When considering the benefits of competition in the context of Coralville Manor's application, the Council was considering how competition would improve the quality and cost of health care to Johnson County's citizens. Thus, the Council properly considered competition in its evaluation of the application. Notwithstanding, we do not believe fostering competition was the sole or primary basis upon which the Council reached its decision. *See Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 670 (Tenn.1977).

Likewise, we find no merit to the argument that the Council ignored the statutory criteria of section 135.66. The review of the application was extremely thorough, and we are satisfied all of the issues raised by the affected persons were fully considered. *See Nat'l Nephrology Foundation v. Dougherty,* 138 N.J.Super. 470, 351 A.2d 392, 396 (App.Div.1976). The written decision and the recorded comments of the Council members at the public hearing reflect the Council's deliberate and detailed application of the criteria to Coralville Manor's application. *See Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1125 (record revealed agency fully considered the important aspects of the proposed project); *On With Life, Inc.,* 532 N.W.2d at 497. The Council's written decision included the four mandatory findings and reasoned explanations for finding the presence of each factor in the application.

■ Furthermore, the record contained sufficient evidence upon which the Council could have based its findings. *See Cathedral Rock of Granite City, Inc.,* 242 Ill.Dec. 158, 720 N.E.2d at 1123. The state bed need formula projected a future need for 121 long-term care beds in Johnson County. The record indicated Johnson County is the fastest growing county in the state of Iowa. *See Humana of Tennessee,* 551 S.W.2d at 670 (record demonstrated that the county in which the proposed health facility would be located was one of the fastest growing counties in the region). Most importantly, the population for those sixty-five years and older in Johnson County had increased 74% since 1980, with no corresponding increase in the number of long-term care beds. Moreover, the occupancy rates of the seven county nursing facilities were consistently high. Additionally, no facility in the county had a CCDI unit, and the CCDI units in neighboring counties were either full and/or only accepted private pay pa-

tients. The only factor somewhat in dispute was the availability of adequate health personnel resources to staff the new facility. Although the representatives from neighboring facilities testified that Coralville Manor would be unable to fill its staffing requirements, both the owner of Coralville Manor and Coralville's economic developer countered that the staffing issues could be adequately resolved. However, the availability of resources was only one factor to consider, and the Council was not required to accept any parties' particular projection of future staffing difficulties. *See Nat'l Nephrology Foundation*, 351 A.2d at 396 (the fact that the agency did not give a factor the weight that a party would have preferred does not mean the agency ignored the appropriate criteria). In short, the Council was not convinced staffing shortages would be as detrimental to Coralville Manor's facility as the affected parties predicted at the hearing. *See On With Life, Inc.*, 532 N.W.2d at 498.

When examining the Council's decision in light of all of the evidence presented to the Council, we find the decision to grant the certificate was sufficiently supported by the record. *See Dickinson County*, 521 N.W.2d at 468. The Council's decision was not unreasonable, arbitrary, capricious, or without regard to the law. *See Mercy Health Ctr.*, 360 N.W.2d at 812. Additionally, in making its determination, the Council adhered to the procedural requirements of section 135.66, and the general requirement imposed on agencies to act reasonably. *Citizens' Aide/Ombudsman*, 454 N.W.2d at 820; *Farmers State Bank*, 433 N.W.2d at 740; *Polk County*, 330 N.W.2d at 277.

## V. Conclusion.

We conclude the evaluation of a certificate of need application does not constitute a contested case, implicating the requirements of section 17A.12. No statute or constitution requires the Council to provide an evidentiary hearing to those affected by a proposed certificate of need. In addition, we find the Council's decision to grant Coralville Manor's application was supported by the record. The district court correctly denied the three petitioning nursing facilities' petition for judicial review.

**AFFIRMED.**

All justices concur except TERNUS, J., who takes no part.