**CITIZENS'
AIDE/OMBUDSMAN, Appellant,**

v.

**Sheriff Robert ROLFES, Appellee.**

No. 89–235.

Supreme Court of Iowa.

April 18, 1990.

**816**

Victoria L. Herring, West Des Moines, and Michael K. Elliott, Des Moines, for appellant.

Raymond Rosenberg of The Rosenberg Law Firm, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

The Office of Citizens' Aide (Citizens' Aide), a state office under Iowa Code chapter 601G (1989), began an investigation of Robert Rolfes, sheriff of Osceola County, Iowa. Rolfes initially cooperated but later refused to respond to Citizens' Aide subpoenas unless he was given "contested case" procedural protections under Iowa Code chapter 17A. Citizens' Aide sought an order from the district court to compel compliance with its subpoenas, and Rolfes sought a protective order. The district court granted a protective order, thus effectively halting Citizens' Aide's investigation. On the appeal by Citizens' Aide, we reverse and remand.

The facts are undisputed. In June of 1988, Citizens' Aide began its investigation of Rolfes concerning alleged misuse of government property and violations of the Iowa gift law. The investigation was commenced without prior notice to Rolfes. Three investigators from Citizens' Aide arrived in Sibley, Iowa, with a letter to Rolfes notifying him of the investigation. They also handed him several subpoenas. Rolfes initially complied with the subpoenas, but after consultation with an attorney, he refused to comply further, claiming he was entitled to the procedural protections accorded in contested cases under chapter 17A. The investigation quickly became a matter of public knowledge, and stories soon began to appear in local newspapers which detailed the nature of the investigation and the complaints involved.

The district court found that Citizens' Aide was an "agency" under chapter 17A and that it had abused its discretion by investigating potential criminal matters which, the court suggested, were more appropriately left to other authorities. The court concluded that the investigation of Rolfes was a "contested case," and because Citizens' Aide had not complied with the contested case procedures of chapter 17A, it could not pursue its investigation any further.

This appeal by Citizens' Aide raises four issues: (1) whether Citizens' Aide is an "agency" under chapter 17A, (2) whether the investigative process by Citizens' Aide constitutes "contested case" or "other agency action" under chapter 17A, (3) whether constitutional or statutory rights to a hearing are implicated in Citizens' Aide's investigation, and (4) whether Citizens' Aide abused its discretion and acted unreasonably in conducting its investigation of Rolfes.

## I. The Status of Citizens' Aide as an "Agency".

■ Citizens' Aide contends that the unique function of its office distinguishes it from other creatures of statute and that the legislature did not intend to include its office in the definition of agency.

Section 17A.2(1) provides this definition: "Agency" means each board, commission, department, officer or other administrative office or the unit of the state. "Agency" does not mean the general assembly, the judicial department or any of its components, the office of consumer advocate, the governor or a political subdivision of the state or its offices and units.

The first sentence of this definition, taken alone, would obviously include the Citizens' Aide because the phrase "board, commission, department, officer or other administrative office" is very broad. The second sentence of the definition provides for limited exceptions, and clearly Citizens' Aide is not one of those entities excepted.

We agree with Rolfes that, for purposes of chapter 17A proceedings, the Office of Citizens' Aide is an "agency." Citizens'

Aide concedes that, if it is an agency under the definition of chapter 17A, Rolfes is entitled to the protections accorded by that chapter. That raises the second issue.

## II. The Nature of the Citizens' Aide Investigation.

■ Under chapter 17A, an agency's action may be characterized as rule-making, contested case or other agency action. Polk County v. Iowa State Appeal Bd., 330 N.W.2d 267, 276 (Iowa 1983). Citizens' Aide's investigation is clearly not rule-making, and neither party claims it is. Thus, the action could only be construed to be either a contested case or other agency action.

> Under chapter 17A, a contested case is a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing.

Iowa Code § 17A.2(2). See generally Bonfield, The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act, 63 Iowa L.Rev. 285, 291 (1977) [hereinafter Bonfield, Formal Agency Adjudication].

We believe the investigation by Citizens' Aide fails the test for a contested case under section 17A.2(2) in one key respect: it did not determine the legal rights, duties, or privileges of Sheriff Rolfes. To be a contested case, the agency action must be one which determines the rights of specific individuals based on their own particular facts and circumstances. Id. at 291–92.

Citizens' Aide's functions include, among others: investigation of administrative agency action, determination of the scope and manner of its investigations, the request and receipt of information and assistance from an agency, the entry upon and investigation of premises, the issuance of subpoenas to compel testimony and production of documents, and the power to petition a district court for an order directing obedience to the subpoena. Iowa Code § 601G.9. Citizens' Aide's investigations do not involve an adjudication of legal rights, duties or privileges, but only the discovery of facts in relation to a particular investigation.

When the Citizens' Aide investigation is complete, the information gathered is referred to appropriate authorities for further action, if any, to remedy any wrongs discovered. In an analogous case, the Supreme Court has held that "purely investigative and fact-finding" activity of an agency is not an adjudication of a party's legal rights. Hannah v. Larche, 363 U.S. 420, 440–41, 80 S.Ct. 1502, 1513–14, 4 L.Ed.2d 1307, 1320–21 (1960). The Court stated:

> [w]e think it is necessary at the outset to ascertain both the nature and function of this Commission. Section 104 of the Civil Rights Act of 1957 specifies the duties to be performed by the Commission. Those duties consist of (1) investigating written, sworn allegations that anyone has been discriminatorily deprived of his right to vote; (2) studying and collecting information "concerning legal developments constituting a denial of equal protection of the laws under the Constitution"; and (3) reporting to the President and Congress on its activities, findings, and recommendations. As i[s] apparent from this brief sketch of the statutory duties imposed upon the commission, its function is purely investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action.

Id. (emphasis added).

Also, a contested case is defined as a proceeding "required by constitution or statute to be determined by an agency af-

ter an opportunity for an evidentiary hearing." Iowa Code § 17A.2(2). An evidentiary hearing is " 'an oral proceeding whose purpose is to determine disputed facts of particular applicability known as adjudicative facts—the who, what, when, where, and why of particular individuals in specified circumstances.' " *Polk County,* 330 N.W.2d at 277 (quoting Bonfield, *Formal Agency Adjudication,* at 288).

Generally, an investigation has been distinguished from a hearing. An "investigation" is said to be a nonjudicial function of an administrative agency for a general, one-sided presentation of issues without issues drawn. A "hearing" is appropriate to quasi-judicial proceedings which include parties, issues of law and fact, and at which parties are entitled to be present, participate, and obtain records of proceedings. 73 C.J.S. *Public Administrative Law and Procedure* § 76 (1983). The process of investigation should not be characterized as an evidentiary hearing.

For these reasons, we conclude that Citizens' Aide investigations are not "contested case" actions under chapter 17A, but rather are "other agency actions." The importance of this distinction lies in the procedural requirements which attach. In *Allegre v. Iowa State Bd. of Regents,* 349 N.W.2d 112, 116 (Iowa 1984), we stated that

> [t]he practical result of this characterization is that the "contested case" procedural requirements of sections 17A.10–.17 and .19 are not applicable. Therefore, the Board is subject only to those procedural ... requirements of its enabling legislation ... and general constitutional and statutory requirements that agencies act "reasonably."

(Citation omitted.)

In *Hannah,* the Supreme Court held that no procedural due process rights attach to actions of an agency involved in a purely investigative and fact-finding mode. It stated:

> "Due Process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when govern-

mental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that a full panoply of judicial procedures be used.

*Hannah,* 363 U.S. at 442, 80 S.Ct. at 1514, 4 L.Ed.2d at 1321.

Further, the Supreme Court in *Securities and Exchange Commission v. O'Brien,* 467 U.S. 735, 742, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615, 621–22 (1984), relying on *Hannah,* held that the due process clause of the fifth amendment is not violated "when a federal administrative agency, without notifying a person under investigation, uses its subpoena power to gather evidence adverse to him." It is apparent that a hearing prior to the investigation is not required by the Constitution.

### III. *The Due Process Argument.*

■ Rolfes contends that, even if the investigation is characterized as "other agency action," he must nonetheless be given some type of hearing to comply with the due process cause of the fourteenth amendment. Rolfes' procedural due process argument is based on a claimed infringement of a liberty interest. He points to the fact that his recent election victory was by a smaller margin than in the previous election. He claims that the investigation caused doubts about his reputation and a loss of public trust and confidence in him.

The liberty interest protected under the United States Constitution is

> the right of the individual to contract, to engage in any of the common occupations of life, ... and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548, 558 (1972) (quoting *Meyer v. Nebraska,* 262

U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1922)).

This has been said to mean that

[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

*Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558 (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971)).

Governmental action is said to have deprived a party of a liberty interest when it

impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.

*Id.*

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court enunciated the standard for the application of this protected liberty interest. It explained its holdings in *Roth* and *Wisconsin v. Constantineau* as follows:

We think that ... "because of what the government is doing to him," referred to the fact that the governmental action taken in that case [*Constantineau* ] deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of the citizenry. "Posting," [governmental action] therefore, significantly altered his status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards. The "stigma" resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such defamation, standing alone, deprived Constantineau of any "liberty" protected by the procedural guarantees of the Fourteenth Amendment.

....

Thus it was not thought sufficient to establish a claim under ... the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. *Certainly there is no suggestion in Roth to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.*

*Paul,* 424 U.S. at 708–09, 710, 96 S.Ct. at 1164, 1165, 47 L.Ed.2d at 418, 419 (emphasis added).

It is clear from this standard that one must be deprived of a recognized liberty interest. In this case, that interest is continued employment. However, Rolfes is still employed as sheriff, and due process does not mandate a pre-investigation hearing under the circumstances of this case.

## IV. *The Abuse-of-Discretion and Unreasonableness Claims.*

 Rolfes alleges, and the district court found, that Citizens' Aide abused its discretion and acted unreasonably in conducting its investigation of Rolfes. *See* Iowa Code § 17A.19(8)(g). In *Churchill Truck Lines v. Transportation Regulation Board,* 274 N.W.2d 295, 299–300 (Iowa 1979), we observed that

"[u]nreasonable" has been said to mean action in the face of evidence as to which there is no room for difference of opinion among reasonable minds ... or not based on substantial evidence.

We agree with Citizens' Aide that its actions were not shown to be unreasonable. If Rolfes had been denied statutory or constitutional rights to a hearing as he claims, Citizens' Aide could be said to have acted unreasonably. As discussed above, however, he was not denied such rights. Nor may the actions of Citizens' Aide be said to be unreasonable under the "reasonable minds" analysis of *Churchill.*

Similarly, we do not agree that the Citizens' Aide investigation was an abuse of its discretion. While some of the investigation might have been undertaken by other entities, such as a prosecuting attorney or grand jury, there is nothing in the mandate

of Citizens' Aide's authority which suggests that it lacks authority to conduct such investigations.

Of course, any agency action, including this investigation, may still be reviewed under chapter 17A, as "other agency action" under the "general constitutional and statutory requirements that agencies act 'reasonably.'" *Allegre,* 349 N.W.2d at 116.

We conclude that the district court erred in entering the protective order and therefore reverse and remand for further proceedings.

REVERSED AND REMANDED.