**IN THE COURT OF APPEALS OF IOWA**

No. 14-0205
Filed April 8, 2015

**MONROE BRANSTAD,**
        Petitioner-Appellant,

**vs.**

**STATE OF IOWA ex rel., NATURAL**
**RESOURCES COMMISSION and the IOWA**
**DEPARTMENT OF NATURAL RESOURCES,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Hancock County, Rustin T.

Davenport, Judge.


        A petitioner appeals the district court's refusal to award attorney fees in his

judicial review action against the Iowa Department of Natural Resources.

**REVERSED AND REMANDED.**


        Christine E. Branstad of Branstad Law, P.L.L.C., Des Moines, and James

L. Pray of Brown, Winick, Graves, Gross, Baskerville, and Schoenebaum, P.L.C.,

Des Moines, for appellant.

        Thomas J. Miller, Attorney General, David R. Sheridan, Assistant Attorney

General, and David L. Dorff, Assistant Attorney General Environmental Law

Division, for appellee.


        Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

Monroe Branstad appeals the district court's denial of his application for attorney fees arising out of his judicial review petition. He claims the district court incorrectly determined the exceptions to Iowa Code section 625.29 (2011), applied to his case to preclude an award of attorney fees. He also claims the district court should have concluded he was a "prevailing party" under that statute. Because we find no exception applies to preclude the award of attorney fees and conclude Branstad was the prevailing party, we reverse and remand to the district court for a hearing to determine the amount of attorney fees Branstad is entitled to recover.

## I. Background Facts and Proceedings.

This action began with the discharge of sweet corn silage leachate from a containment basin on Branstad's property. The Iowa Department of Natural Resources (the DNR) investigated the discharge and conducted a fish kill count in the nearby Winnebago River. Branstad entered into a consent decree admitting the discharge occurred but denied the discharge caused the fish kill in the river and reserved the right to challenge any damage assessment. The DNR issued a restitution assessment requiring Branstad to pay $61,794.49 in restitution for killing over 31,000 fish. It extrapolated this number for the fish kill based on its application of the American Fisheries Society Publication 24, which estimates the number of fish killed based on sampling sites. However, only 2233 fish were actually counted.

Branstad appealed the restitution assessment, and the case proceeded to an evidentiary hearing before an administrative law judge (ALJ) from the Iowa

Department of Inspections and Appeals. The ALJ issued a proposed decision affirming the restitution assessment concluding "DNR personnel conducted an investigation into the extent of the fish kill in accordance with the applicable rules and procedures." Branstad appealed this decision to the Iowa Natural Resources Commission. In a vote of 4-to-1, the commission adopted the proposed decision of the ALJ.

Branstad filed a petition for judicial review with the district court. The district court articulated the claims made by Branstad as

> (1) the agency erred by failing to consider the act-of-God defense; (2) the agency erred by failing to find that the DNR incorrectly applied the American Fisheries Society guidelines for fish kill investigations; (3) the agency erred in finding causation; (4) the statutes or rules relied upon by the agency are unconstitutionally void for vagueness or are unconstitutional as applied; and (5) the agency's actions violate Branstad's substantive and procedural due process rights under the Fourteenth Amendment.

After receiving briefs from the parties, the district court issued its decision rejecting Branstad's act-of-God defense and causation challenge; however, the court determined "the method used by the DNR to determine the number of dead fish is inconsistent with its rules it adopted to implement Iowa Code [section] 481A.151(2)."[1] The court reversed the agency's decision and remanded the case to the agency to recalculate the restitution owed based on the number of dead fish actually counted. The agency ultimately issued a decision on remand reducing the amount of restitution owed for the fish kill from $61,794.49 to $5297.19. Branstad did not appeal this assessment.

---

[1] Because the district court reversed the agency's restitution assessment based on the agency's failure to comply with the guidelines it adopted, the court did not address Branstad's constitutional claims.

Branstad subsequently filed a motion for an award of attorney fees in the judicial review action, asserting under Iowa Code section 625.29 he was entitled to fees and expenses as the prevailing party and submitting an affidavit itemizing the $70,720.19 claim. The district court denied the motion concluding three of the exceptions in section 625.29 applied to preclude the award of attorney fees and expenses. Branstad now appeals claiming the district erred in denying his request.

## II. Scope and Standard of Review.

Our review is for correction of errors at law. Iowa R. App. P. 6.907. We must determine whether the district court correctly applied the applicable law with respect to the award of attorney fees arising out of a judicial review action. *Medco Behavioral Care Corp. of Iowa v. State Dep't of Human Servs.*, 553 N.W.2d 556, 561 (Iowa 1996).

## III. Attorney Fees Under Section 625.29.

Iowa Code section 625.29 provides, in part and relevant to this appeal:

> 1. Unless otherwise provided by law, and if the prevailing party meets the eligibility requirements of subsection 2, the court in a civil action brought by the state or an action for judicial review brought against the state pursuant to chapter 17A other than for a rulemaking decision, shall award fees and other expenses to the prevailing party unless the prevailing party is the state. However, the court shall not make an award under this section if it finds one of the following:
> a. The position of the state was supported by substantial evidence.
> b. The state's role in the case was primarily adjudicative.
> c. Special circumstances exist which would make the award unjust.

The district court did not address whether Branstad was a "prevailing party" under this statute; instead, it relied on the exceptions found in (a) "The

position of the state was supported by substantial evidence," (b) "The state's role in the case was primarily adjudicative," and (c) "Special circumstances exist which would make the award unjust" to deny Branstad's request for attorney fees. The application of any one of these exceptions would suffice to deny Branstad his claim for attorney fees and expenses. *See* Iowa Code § 625.29(1) ("However, the court shall not make an award under this section if it finds *one* of the following." (emphasis added)). We first turn our attention to those exceptions.

**A. Substantial Evidence.** In concluding substantial evidence supported the State's position, the district court noted the State was successful in proving Branstad caused the fish kill, in defending against the act-of-God defense, and in overcoming the challenges to the impact of the recent heavy rain and diverse fish habitats on the fish kill count. The court noted the State only lost on the issue of whether the fish kill count was conducted according to the American Fisheries Society Special Publication 24, which then led to a substantial reduction in the damages assessed.

In the underlying action, the State had for many years asserted the publication was only a guideline and relied on the expertise of its biologist to exercise his discretion in applying that publication to the unique circumstances of each fish kill investigation. In support of its position, the State cited the language of the publication that noted the methods "are guidelines only" and recommended that fishery managers "use professional judgment and expertise to conduct specific studies." The advisory of the publication also noted that "[e]ach kill is unique and requires some adaptation of the general methods." The district court

noted that while it had concluded the counting method utilized by the DNR was not authorized by the agency rules, "a reasonable mind could accept the DNR fish count as an accurate number of dead fish. Accordingly, the fish count meets the substantial evidence test."

In his appeal, Branstad claims the district court failed to identify the "position" of the State that was supported by substantial evidence. Branstad maintains that the State's overarching position was that he was liable for more than $61,000 in restitution based on the fish kill investigation and faulty calculation of 31,000 dead fish, when only 2233 had actually been counted. He claims causation was not an issue before the court in light of the consent decree in which he admitted the silage leachate escaped his containment basis which led to an old county tile line, which led to a stream and a drainage ditch, which led to the river. He likewise states the act-of-God defense and challenges to the heavy rainfall event and diverse habitats were alternative explanations for the number of dead fish inaccurately calculated by the DNR. Branstad asserts he should not be penalized for asserting, but not prevailing, on his alternative arguments. Branstad also claims the substantial evidence exception should not be applied here because the primary issue of the case was a legal question— whether the DNR followed the correct methodology when it counted the fish—not a factual question.

Branstad's claim that the consent decree resolved the causation issue is not entirely accurate. The consent decree itself specifically provided that while Branstad admitted there was a discharge from his property into the river, the decree stated Branstad "denie[d] that the discharge admitted herein caused the

death of the fish" and Branstad "further reserves the right to contest any claim for damages brought by the DNR." In Branstad's petition for judicial review, he asserted he was entitled to relief because the State "incorrectly and without any basis in fact, assumes that all of the dead fish that were found were killed by a release of contamination" and asserted he "did not cause the alleged fish kill or, in the alternative, should not be assessed 100% of the fish kill." The district court articulated one of Branstad's claims in its judicial review decision as "(3) the agency erred in finding causation." The court found that once the discharge was remediated, the water quality improved and ultimately held substantial evidence supported the agency's finding of causation.

Similarly, Branstad's act-of-God defense and his challenge to the fish kill count based on the significant rain event and diverse fish habitats were also raised in Branstad's judicial review petition and addressed by the district court in its decision. However, Branstad primarily attacked the faulty methodology employed by the DNR to calculate the total number of dead fish and the associated restitution assessed. Therefore, Branstad is correct to articulate the State's position as whether he was liable for more than $61,000 in restitution based on the fish kill investigation. We must analyze whether the State's position in response to Branstad's claim is sustained by substantial evidence.

Substantial evidence under Iowa Code section 625.29(1)(a) has been defined as "evidence a reasonable mind could accept as adequate to reach a conclusion." *In re Property Seized from McIntyre*, 550 N.W.2d 457, 460 (Iowa 1996). We look only at the evidence supporting the State's case, and a finding can be supported by substantial evidence even though "two inconsistent

conclusions might be inferred from the same evidence." *Id.* at 459–60. "Substantial evidence is more than a scintilla of evidence, but it need not be a preponderance of evidence." *Id.* at 460. Branstad bears the burden to prove the State's position is not supported by substantial evidence. *See id.* at 459.

The district court held the methodology employed by the DNR to calculate the total number of fish killed was flawed. The State's argument in support of the methodology it employed was that the American Fishery Societies' publication was only a "guideline" and that its employee was using his professional judgment and expertise to adjust the methodology to the local conditions.

The district court, citing Iowa Code section 481A.151(2), disagreed, as the enabling statute requires "rules" to be followed when investigating fish kills. The district court found:

> Although the language in AFS 24 discusses the rules as guidelines, once the DNR adopted the AFS 24 as rules of the State of Iowa, they were no longer guidelines. To allow the DNR to choose a methodology contrary to the AFS 24 violates the requirement that the rules should provide fair notice to the public, and that the rules will be consistently applied. The actual method used by the DNR in this case was not a method that was subject to review prior to the adoption of the DNR regulations. Further, the DNR's decisions regarding sampling are contrary to the sampling methods that are suggested by the AFS 24.

The DNR employed the "narrow streams accessible at and beyond road crossings" methodology while Branstad argued it should have used the "completely accessible streams" method. The court, finding the Winnebago River to be navigable, agreed with Branstad. It further found that even the incorrect method the DNR employed was not consistently followed in this investigation, leading to even greater prejudice to Branstad.

DNR failed to recognize the American Fisheries Society Publication 24 was not a guideline, but was in fact a regulation to follow, once it was adopted by the agency. It also failed to correctly interpret its own regulation in order to select the proper methodology to apply to a fish kill investigation on the Winnebago River. In addition, it failed to even apply this incorrect methodology it had chosen properly as the DNR investigator admitted to not following his own rules regarding which sample cites to choose. We conclude substantial evidence does not support the State's position that Branstad was responsible for approximately $61,000 in restitution for the fish kill event. Thus, contrary to the district court's finding, the substantial-evidence exception does not apply here to preclude an award of attorney fees to Branstad.

**B. Primarily Adjudicative.** The district court also relied on the statutory exception found in section 625.29(1)(b)—"The state's role in the case was primarily adjudicative"—to preclude an award of attorney fees to Branstad. The court concluded the agency's role "was to settle and decide issues raised by [Branstad]" and that the agency "went far beyond fact finding and investigation." The court noted a full evidentiary hearing was held in front of an ALJ whose decision was affirmed by the Iowa Natural Resource Commission. The district court likened the case to *Remer v. Board of Medical Examiners*, 576 N.W.2d 598 (Iowa 1998), and held the agency's role was to determine whether the restitution assessment was appropriate and consider Branstad's defenses and alternate theories of causation. Because the agency investigated and adjudicated Branstad's actions, the court applied the primarily adjudicatory exception to preclude the award of attorney fees here.

In *Remer*, the supreme court concluded the board of medical examiners' role was primarily adjudicative where "following a lengthy investigation, the board filed formal disciplinary charges against Remer," notice was served on Remer, and "the case was contested in a full evidentiary hearing before a three-member panel of the board." 576 N.W.2d at 603. An ALJ assisted the three-member panel in conducting the hearing. *Id.* While the charges brought against Remer were ultimately dismissed, the court concluded the State's role was still primarily adjudicative as "[t]he panel of the board proceeded with a full evidentiary hearing with all elements in place to effectuate an adjudication." *Id.*

To clarify when an agency's role is primarily adjudicative versus investigatory, the *Remer* court cited *Citizens' Aide/Ombudsman v. Rolfes*, 454 N.W.2d 815, 817 (Iowa 1990). There the agency was found to serve primarily an investigative function requesting and receiving information, and issuing subpoenas to compel testimony and production of documents but was not involved in adjudicating legal rights, duties, or privileges. *Citizens' Aide/Ombusdman*, 454 N.W.2d at 817. The *Remer* court also cited the case of *Hannah v. Larche*, 363 U.S. 420, 440-41 (1960), from the United States Supreme Court, where that court noted the Civil Rights Commission's duties consisted of investigating allegations of discrimination, collecting information and reporting its activities, findings, and recommendations to the President and Congress. The Supreme Court noted the agency,

> does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or property. In

> short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights.

*Hannah*, 363 U.S. at 441.

Branstad asserts the DNR's role in this case was not adjudicative but prosecutorial or executive. He distinguishes this case from *Remer* on a number of grounds. He points out the DNR assessed restitution against him based on its investigation *prior to* any adjudicative hearing on the merits of the case and before Branstad could even participate in the process. He only received an evidentiary hearing on the restitution because he appealed the assessment. In contrast, the board of medical examiners in *Remer* only filed charges against Remer after its investigation. 576 N.W.2d at 603. Remer was then provided an opportunity to plead his case in a full evidentiary hearing, and it was only after this hearing before the agency that any adverse action against Remer could be taken. *Id.*

Another point of distinction between *Remer* and this case involves the tribunal who heard the evidentiary hearing and the personnel that prosecuted the case. In *Remer* the hearing took place before a three-member panel of the agency board, assisted by an ALJ. *Id.* The board's panel issued its proposed decision that became final when no appeal was taken. *Id.* The attorney general prosecuted the case, not the agency's personnel. *Id.* at 599. The hearing in Branstad's case took place before an impartial ALJ from the Iowa Department of Inspections and Appeals, not before the DNR or the Iowa Natural Resource Commission. The DNR—the very agency which issued the restitution assessment—was the prosecutor in the action before the ALJ and neither the

DNR nor the Commission issued the decision. While the Iowa Natural Resource Commission did vote to adopt the ALJ's proposed ruling, the evidentiary hearing did not take place before that agency.

While primarily adjudicative is not defined in the statute, the *Remer* court determined, based on a dictionary definition, an agency's role is primarily adjudicative if the "agency's function principally or fundamentally concerns settling and deciding issues raised." *Id.* at 601. In addition, pursuant to the statute, we are look at the State's role "'in the case' at bar, not its role in other cases or as a general matter." *Id.*

The State asserts that the "State's role" should be interpreted broadly to include not only the DNR's investigation and assessment, but also the ALJ's decision—as it was employed by the Iowa Department of Inspections and Appeals—and the action taken by the Iowa Natural Resource Commission. *See* Iowa Code § 625.29(1)(b) ("The *state's* role in the case was primarily adjudicative." (emphasis added)). We are mindful that the exception should not be interpreted to swallow the rule. *See Remer*, 576 N.W.2d at 604 (Carter, J., concurring specially) ("I write separately to stress that in my view all administrative action that results in a contested case hearing does not necessarily fall under that statute. Almost all administrative action that causes adverse consequences to a party seeking attorney fees under section 625.29 will have gone through a contested case hearing process. That is a necessary consequence of the rule requiring exhaustion of administrative remedies. But, this does not mean that the administrative action that is the subject of the complaint was itself primarily adjudicative.").

Here, the State was unable to articulate any agency action that would not qualify as primarily adjudicative under its interpretation of this exception, and nor can we. We will not interpret the statute so broadly. *See* Samuel A. Thumma & Barbara J. Dawson, *The Iowa Equal Access to Justice Act: Is Recovery Available*, 39 Drake L. Rev. 431, 450–51 (1989–90) (noting that if the "'primarily adjudicative' exception" is broadly interpreted, it "would render the Iowa EAJA totally ineffective."); *see also Citizens' Aide/Ombudsman*, 454 N.W.2d at 817 (noting that agency action is characterized as "rule-making, contested case, and other agency action" and determining the office of Citizens' Aide is "other agency action" as that agency's functions include investigation and receipt of information only).

We focus on the role of the DNR, and not the role of the ALJ, as the DNR was the agency that investigated the fish kill and assessed the restitution against Branstad, prior to any opportunity for a hearing, and then prosecuted the administrative appeals. We conclude *Remer* is not controlling in this case as its facts are sufficiently distinguishable. Instead, we conclude the facts here show the State's role was not primarily adjudicative as the DNR investigated and prosecuted the case against Branstad. To contest the initial restitution assessment, Branstad was left with filing an appeal in order to be entitled to an evidentiary hearing, and that evidentiary hearing took place before an impartial ALJ, not before the agency investigating the case. Because we conclude the State's role in this case was not primarily adjudicative, contrary to the district court's finding, we conclude this exception does not apply to preclude an award of attorney fees to Branstad.

**C. Special Circumstances.** Finally, the district court applied the exception found in section 625.29(1)(c)—"Special circumstances exist which would make the award unjust"—to preclude an award of attorney fees. The court held the State clearly established Branstad's actions caused the fish kill and while it was ultimately held he would be responsible for killing 2233 fish, "it cannot be seriously argued that these were the only fish killed as a result of the silage runoff." The court clearly considered the damage done by the runoff from Branstad's containment basin as precluding an award of attorney fees to Branstad even if Branstad did the public a service by bringing this action to challenge the DNR's fish kill calculation methods.

Branstad maintains the restitution for the fish kill was not intended to be punitive, and thus, the district court's consideration of the damage he did to the river and the wildlife was not proper. While there is no Iowa case law articulating what special circumstances make an award unjust, Branstad points to federal case law interpreting similar language in the federal act as a "safety valve" to ensure the government is not deterred from advancing, in good faith, novel arguments extending or interpreting the law. *U.S. Dep't of Labor v. Rapid Robert's, Inc.*, 130 F.3d 345, 347 (8th Cir. 1998). The exception also permits courts to deny awards where equitable considerations so dictate. *Id.* Branstad claims this exception is to be applied in cases where individuals repeatedly violate the law but escape the legal consequences on a technicality. He maintains this case does not fit that mold.

The State disagrees, asserting that Branstad achieved a significant reduction in the restitution amount, not because his actions did not result in the

killing of a multitude of fish, but because the methodology the State used to arrive at a total figure was improper. This left the State uncompensated for a significant number of fish that it claims were killed as a result of Branstad's illegal discharge. The State maintains to permit an award of attorney fees here would have a chilling effect on the State's advancement of good faith restitution claims against persons responsible for killing or injuring wildlife. Thus, the State asserts using the "safety valve" of section 625.29(1)(c) to prevent an award of attorney fees to Branstad is proper in this case.

Branstad significantly reduced the restitution owed, based on correcting an illegal and long-standing method used by the DNR across the state for determining a fish kill. The action brought by Branstad also had the effect of forcing the DNR to acknowledge that what it considered to be its loose "guidelines" were in fact standardized "rules," so that in the future, the public is put on notice as to the methods utilized. The future fish kill counts will be more accurate and follow more closely the methods set out in the American Fishery Society Publication 24. This action served the public good, and we conclude there are no special circumstances that would make an award of attorney fees and expenses to Branstad unjust. Because we conclude an award of attorney fees would not be unjust in this case, contrary to the district court's finding, we conclude this exception does not apply here to preclude an award of attorney fees to Branstad. Having found none of the exceptions the district court relied on to deny Branstad an award of attorney fees applicable, we now must turn our attention to whether Branstad was a prevailing party—an issue not reached by

the district court in light of its rulings on the exceptions in Iowa Code section 625.29(1)(a)–(c).

   **D.   Prevailing Party.**   The term "prevailing party" is not defined in the statute.   "Absent legislative definition or a particular and appropriate meaning in law, we give words their plain and ordinary meaning.   We also consider the context in which the term is used."   *Remer*, 576 N.W.2d at 601 (citations omitted).   Where the term is not defined by the legislature, we turn to dictionaries for guidance.   *Id.*   Black's Law Dictionary defines prevailing party as "A party in whose favor a judgment is rendered, regardless of the amount of damages awarded.   Also termed successful party."   Black's Law Dictionary 1154 (8th ed. 2004).   In a Fair Labor Standards Act case, our supreme court has recognized the United States Supreme Court's explanation of when a party prevails as "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."   *Dutcher v. Randall Foods*, 546 N.W.2d 889, 895 (Iowa 1996).   While no Iowa court has defined what it means to be a prevailing party under section 625.29,[2] we conclude a party need not have prevailed on every issue, or every asserted defense, in order to be considered a prevailing party.   *See Hensler v. City of Davenport*, 790 N.W.2d 569, 589 (Iowa 2010) (noting a factor to consider when awarding attorney fees in a federal civil

---

[2] In the article, *The Iowa Equal Access to Justice Act: Is Recovery Available*, 39 Drake L. Rev. 431, 466 (1989-90), the authors note the lack of Iowa case law defining the term prevailing party and recommend the definition be "a litigant who succeeds on a significant issue on the merits in the final outcome of the litigation and receives some of the benefit sought in the litigation."   The authors also recommend a three-prong inquiry "(1) did a litigant succeed on a significant issue on the merits; (2) was the litigation final; and (3) did the litigant receive a benefit?"

rights action is to consider "the level of the prevailing party's success in the litigation" implying a party can be a prevailing party without winning on all issues).

While Branstad did not obtain relief on every ground or defense he raised in contesting the restitution assessment, he did succeed in demonstrating the adverse financial consequences when the DNR utilized a faulty fish count methodology. His success on this major issue resulted in significantly reducing the amount of restitution assessed against him from $61,794.49 to $5297.19. He also succeeded in compelling the DNR to follow the regulations it adopts specifically with regard to fish kill counts. The future fish kills counts will be more accurate and follow more closely the methodology the agency has adopted. We conclude Branstad in this case was a prevailing party.

## IV.  Conclusion.

Because we conclude Branstad is a prevailing party under section 625.29, and none of the exceptions apply to preclude an award of fees and expenses, we remand this case to the district court for a determination of an appropriate award under section 625.29. The court should also consider an award of appellate attorney fees. *See Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (noting that the mechanics lien statute did not limit an award of attorney fees to those incurred in the district court and therefore the statute contemplated an award of appellate attorney fees as well).

**REVERSED AND REMANDED.**